G. A. HEARD, Appellant, v. F. NANCOLAS, Appellee.

**REFORMATION OF INSTRUMENTS: Mutual Mistake and Non-Negligence.** He who relies on *mistake* as a ground for reformation of an instrument must clearly and satisfactorily show: (1) That the mistake was *mutual;* and (2) that he was not *negligent* in the preparation of the contract.

*Appeal from Franklin District Court.*—G. D. THOMPSON, Judge.

DECEMBER 12, 1919.

ACTION to reform a written contract. The district court dismissed plaintiff's petition. Plaintiff appeals.—*Affirmed.*

*John M. Hemingway,* for appellant.

*E. P. Andrews,* for appellee.

GAYNOR, J.—On the 5th day of June, 1916, the plaintiff and defendant entered into a written contract for the exchange of certain properties. In this contract the defendant undertook and agreed to convey to the plaintiff, by

warranty deed, on or before the 1st day of March, 1917, for a consideration, the adequacy of which is not in controversy here, the east half of the northwest quarter of Section 11–91–21, subject to mortgage incumbrance of $7,500, and to pay plaintiff at said date the sum of $8,700, and further agreed to furnish an abstract showing marketable title free from incumbrance, except any tax that may be levied or assessed against the property for drainage purposes, prior to delivery of deed, and subsequent to the date of this contract.

The controversy arises here over that provision of the contract which excepts tax levied or assessed against the property for drainage purposes, prior to the delivery of deed, and subsequent to the date of the contract. It is the claim of the plaintiff that this provision is found in the printed form in the contract; that it was not read to him; that he didn't know it was there; that the scrivener who prepared the contract assumed to read all the contract, but omitted this portion. The scrivener was the cashier of the Citizens National Bank, and was employed by both parties to reduce the contract to writing. Plaintiff and his wife were both present at the time the writing was prepared and signed by the plaintiff. One Demaris was then claiming to represent defendant. The writing which, upon signing, expressed the contract between the parties, was not signed by the defendant, Nancolas, at the time it was signed by the plaintiff. After it was prepared, and signed by the plaintiff, it was left with Robinson for the defendant's signature. Defendant came in later, and signed the writing, with the contract as therein expressed. The evidence does not show the extent of Demaris' agency with respect to this property. It does not show that he assumed to make a binding contract with the plaintiff. The contract became binding when the writing evidencing the contract was signed by the defendant, Nancolas. There is no showing

that Nancolas had any knowledge of any agreement made between Demaris and the plaintiff, except such as was expressed in the writing, nor does it appear that Demaris had authority to make any other contract than that expressed in the writing. The contract, as expressed in the writing, is the only one which this record shows the defendent had knowledge of, or personally consented to. We are not advised that defendant would have signed this writing and bound himself to the contract therein expressed, if the covenant complained of was omitted from the contract. Inasmuch as there is no evidence of the extent of Demaris' authority to act as agent for the defendant, no evidence that he had authority to bind the defendant by any representations, except such authority as might grow out of an approved agency, the defendant cannot be bound by any statements or representations made by Demaris which are not shown to be within the scope and power of his agency. The best this record shows is that Demaris assumed to act for the defendant; that he entered into negotiations with plaintiff for the exchange of land; that plaintiff went with Demaris to the scrivener agreed upon between them, to prepare a writing which would evidence the contract; that the scrivener prepared the writing, and the same was signed by the plaintiff. Demaris did not assume authority to execute the writing for and in behalf of Nancolas, the defendant, and it does not appear that he had authority to do so. It was left with this scrivener, unexecuted by anyone on the part of the defendant, for defendant's approval and signature. Defendant later came in, found the contract in the form in which it was when signed by plaintiff, and signed the same. It was still left with Robinson by mutual agreement. During this time, and up to the time of the execution of the deed hereinafter referred to, the plaintiff had no communication with Nancolas touching

this contract or the exchange of this property, although he knew Nancolas, and met him quite frequently.

Both could read and write. Plaintiff claims that Robinson assumed to read to him the whole of the contract, but failed to read the part excepting the drainage assessment hereinbefore referred to, and he asks to have the written evidence of the contract reformed, so as to have eliminated from it this provision; and this is based on the theory that the understanding and agreement between him and the defendant's agent, at the time the writing was made, was that he was to have the land, free and clear of incumbrance, except the mortgages aforesaid.

It appears that, prior to the making of this writing, plaintiff asked Demaris whether or not there was any drainage tax assessments against the land. He says that, when he was making the deal with Demaris, as agent for the defendant, there was talk about a drain. He was asked this question:

"When you were making the deal with Demaris, was there any talk about a drainage tax? A. There was about a drain. I asked if there was one, and he said, 'No, the place was all drained, and he didn't think there would be any.' Didn't see Nancolas, the defendant, until after the deal was closed."

On cross-examination, he was asked:

"Now, did you have a talk, you say, with Demaris? A. Yes, sir. Q. About the ditch tax, if there was any ditch tax? A. I asked him if there was any, and he said he didn't see why there should be, because it was all well tiled out now. He said he was sure there wasn't any there then. Q. No assessment? A. No assessment,—no. Q. He didn't say there wasn't any assessment, did he? A. He said there wasn't any that he knew of. Neither he nor I went to look it up. I know that, by looking at the records, I could ascertain whether there was a ditch tax."

It appears by stipulation that drainage district No. 27 includes the land in question; that the petition for this district was filed in the auditor's office of Franklin County on June 24, 1915; that the hearing on the establishment was on February 9, 18, and 23, 1916; first report of the commissioners February 15, 1916; hearing of the claim for damages, February 23, 1916; establishment, February 23, 1916; hearing on benefits, December 13, 1916, and on January 12 and February 16, 1917; and that all of the foregoing matters were entered of record in the auditor's office of Franklin County on the respective dates set out above; that a copy of the notice of assessment of benefits, dated November 9, 1916, was mailed to the various owners indicated thereon, on or about that date, and that the same shows the correct amount of the drainage tax assessed against this property, to wit, $335.12 for one 40 and $238.96 on the other 40. The record further discloses that, on or about the 14th of November, 1916, defendant executed and delivered to the plaintiff a warranty deed for the premises described. The same was accepted by the plaintiff, and, in December, 1916, the plaintiff took actual possession of the land deeded to him.

From the fact that defendant subsequently signed this writing, and thereby ratified the contract, as therein expressed, we may assume that Demaris had authority from defendant to do the things which the record shows he did do with respect to this property, for and in behalf of the defendant. It will be noted that the writing made to evidence the contract was prepared by one who was agreed upon by both Demaris and the plaintiff. There is no evidence that the defendant had any notice of any other contract except that expressed in the writing, and, when he came to execute the contract, the writing was before him; and the writing gave evidence, and the only evidence, to the defendant of the contract which had actually been made

between Demaris, and the plaintiff. He signed it, and, by signing, became bound by the contract as therein expressed, and no other. There is no evidence of any mutual mistake. There is no evidence of any fraud, intentional or otherwise, practiced upon the plaintiff to induce him to sign the contract as therein written. He was not circumvented in any way, or prevented from knowing the contents of the instrument. He could read and write. Before the contract was made, he had discussed the question of drainage and drainage assessment with Demaris. Demaris did not tell him that there was no drainage assessment, but said that he did not know of any; and his opinion was that there would be none, because the land was well drained already. The last expression was clearly an opinion, based upon a communicated fact. There is no evidence that Demaris did know, and there is no conclusive evidence that the defendant himself knew, that this land was included in any drainage district, begun or established. The nearest that the record comes to showing knowledge on the part of the defendant of the establishment of this drainage district and the levy and assessment against this property, is in the stipulation made between the parties, to wit, that notice of assessment of benefits, dated November 9, 1916, was mailed to the various owners indicated thereon, on or about that date, and the further fact, which was as open to the plaintiff as to the defendant, that the record shows that, prior to the time of the making of the contract, certain proceedings were had, touching the establishment of the drainage district. It further appears that Nancolas bought this land on the March preceding the sale to the plaintiff, and that the contract was entered into some months before it is claimed this alleged notice of assessment was mailed to the owners. Defendant denies that he received any of the notices of the assessment issued to landowners, as recited in the stipulation.

We have set out these facts in a general way, as throwing light upon the intention and purpose of the parties as it existed at the time of the making of the contract and the execution of the deed.

This brings us, then, to the only question here for our determination. This involves a fact question, with the rights of the parties dependent upon the legal status which the facts create.

Some talk was had between Demaris and the plaintiff, touching the exchange of these properties. The record does not show what was said, done, or agreed upon between them touching the exchange, except as the same is expressed in the written contract. No conversations or talks appear in this record between these parties, before the making of this contract. Demaris and plaintiff seem to have agreed upon an exchange. They seem to have agreed upon terms. These terms are not shown in this record, except as they appear in the writing. They agreed upon Robinson as the person to reduce the contract to writing. He was the agent of both for that purpose. He did make the writing, and it was read over to the plaintiff, the defendant not being present, except in so far as Demaris represented him. The contract, as prepared and signed, excepts from the covenant of the contract, taxes that may be levied or assessed against the property for drainage purposes, prior to delivery of the deed and subsequent to the date of the contract. These assessments were not made against this property until after the execution and delivery of the deed. If this exception in the contract is to prevail, then the defendant is not bound for the payment of the same because of the exception. The contract became merged in the deed, and the deed was executed and delivered to the defendant before these assessments became a lien upon the land. Presumably, the land is improved to the extent of

the assessment. Presumably, the land is benefited to the extent of the assessment.

This writing, which was intended to evidence the contract between the parties, was left with Robinson for defendant's signature. It was duly executed by the plaintiff, and, upon its face, plaintiff consented to all the provisions therein contained, including the matter now sought to be eliminated from it. When defendant appeared, for the purpose of executing the contract, he had every reason to suppose that plaintiff had full knowledge of the contract, and had consented to it, with all the provisions which it contained, including the matter in controversy. Plaintiff now seeks to avoid this provision, upon a mere showing that the whole contract was not read to him before he signed it. He trusted to Robinson to read it. Robinson was as much the agent of the plaintiff as he was of the defendant. Plaintiff could read and write. He does not appear to have asked any questions or made any suggestions or change or modification, at the time the contract was read to him. To secure the elimination of this portion of the written evidence of the contract, the burden rests upon the plaintiff to purge himself of negligence. He could read and write. The contract was there, open to inspection. He trusted one selected by him to prepare the statement, to read it to him. He signed it, and left it with this same agent, for the purpose of having the defendant execute it, as prepared, and as apparently consented to by the plaintiff.

It has frequently been held by this court, and it is a salutary rule, that all the agreements made between the parties, touching the subject-matter of the contract, when reduced to writing, are presumed to be evidenced by the writing, and the writing is presumed to be the last expression and the fullest expression of the agreement itself. In all law proceedings, it is the only evidence of the con-

tract between the parties. It cannot be altered, modified, or changed by parol testimony, added to, or taken from. Equity, however, assumes jurisdiction to reform the writing, so as to make it conform to an expressed or real agreement made between the parties. Before a court of equity will undertake to reform a written instrument, so as to make it express a contract other than as expressed in the instrument, it must clearly appear that the minds of the contracting parties did not meet upon the proposition therein expressed. It must appear that the actual contract made between the parties was other and different from that expressed in the writing. While courts of equity assume this jurisdiction, and the right to reform written evidence of a contract, they do so only when the evidence discloses that the contract was other and different from that expressed in the writing, and that the writing came through fraud or mistake, and does not express the real contract between the parties. But equity, having respect for the sanctity of written evidence of agreement, changes writings only with reluctance, and requires that the proof to establish that the writing does not express the contract must be clear, satisfactory, and free from doubt, and that the party who seeks reformation was himself free from negligence in the making of the writing. When a party comes into a court of equity, seeking to reform the writing which is made to evidence a contract, and the writing is unambiguous and plain upon its face, and, in and of itself, shows a meeting of the minds of the parties upon the controverted proposition, he is required, under the rules of equity, to make a clear and satisfactory showing of either mistake or fraud in the making of the writing, before equity will relieve him of the legal effect of the writing to which he has made himself a party. The general rule is that, if the writing does not express the prior oral agreement upon which it is founded, the writing will be corrected. That is the basic principle of the

rule. See *Hallam v. Corlett*, 71 Iowa 446. But the proof essential to secure the correction must be such as shows that the minds of the parties did not meet upon the matter sought to be eliminated, and the proof, as said before, must be clear and satisfactory upon that point. Here, we have no evidence that the minds of the parties met upon any proposition touching this drainage, except as it is expressed in the writing. In fact, there appears to have been no discussion between the parties as to the liability of this land for drainage assessment, except such as is involved in the conversation between Demaris and the plaintiff, and there appears to have been no oral agreement between the parties as to whether or not a drainage tax, if assessed between the making of the contract and the execution of the deed, should be borne by one party rather than the other. There is nothing in this record which shows the authority of Demaris to make any contract with the plaintiff touching the exchange of land, except such as appears in the writing, signed by both parties to this suit.

However that may be, we are satisfied that the plaintiff has not proven his right to have this instrument reformed, or the offensive clause stricken from the contract, by that degree of proof which equity requires before it will assume to change the writing. One who seeks to reform the written evidence of a contract assumes the burden, and the courts are not disposed to set aside written instruments, solemnly entered into, or reform or change them, until it is made so manifestly to appear that the writing does not express the contract actually entered into that the court can say that the instrument, as written, does not express the true contract. We need cite no authorities in support of this proposition. The books are full of information upon this point, and all hold to one doctrine. The court dismissed plaintiff's petition, and, we think, rightly so. Without a reformation of the contract, the plaintiff is

not entitled to any of the relief prayed for. The cause is triable *de novo* here. A careful consideration of the record satisfies us that the plaintiff has failed in his proof. The judgment of the district court is, therefore,—*Affirmed.*

LADD, C. J., WEAVER and STEVENS, JJ., concur.