## ÆTNA LIFE INS. CO. v. SHIPLEY.

### No. 13987.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 24, 1939.

Rehearing Denied Dec. 22, 1939.

Carrigan, Hoffman & Carrigan, of Wichita Falls, for appellant.

Napier & Napier, of Wichita Falls, for appellee.

BROWN, Justice.

Appellee, Mrs. Flossie Shipley, surviving wife of Jack Mack Shipley, brought suit against appellant, Ætna Life Insurance Company, to recover on a group life insurance policy issued to L. T. Burns and C. B. Long, intended to cover such of their employees as desired insurance protection thereunder. The policy was issued September 23rd, 1932, but the deceased, Shipley, did not elect to take out insurance thereunder until about October 16th, 1937, when he, as was required of him, made application for such protection in writing.

The following questions were propounded to Shipley, and the answers shown were given by him:

"Q. Are you now in good health and regularly performing the duties of your occupation? A. Yes.

"Q. Have you ever had any disease of the * * * stomach * * * or cancer? A. No.

"Q. Have you any infirmity or growths * * *? A. No.

"Q. Have you consulted, been examined or treated by any physician or practitioner within the past five years? A. Yes; (but the applicant gave as his answer that the treatment was 'cold serum', and as to the length or duration of his ailment, and the degree of recovery, 'O. K.').

"Q. Have you * * * been a patient in any hospital or sanatorium? A. No."

The following statement is found in this application: "I hereby certify that the foregoing answers and statements are made by me and are complete and true, that

they are correctly and fully recorded, and that no material circumstances or information has been withheld or omitted concerning my past and present state of health and habits of life, and I agree that the answers and statements contained herein shall form a part of my application for insurance under said group policy."

The policy of insurance contains the following provisions: "This policy, the application of the employer and the individual application, if any, of the employees insured, constitute the entire contract between the parties hereto. All statements made by the employer or by the individuals insured shall in the absence of fraud be deemed representations and not warranties, and no statement shall avoid any insurance under this policy or be used in defense of a claim under it unless it is contained in a written application."

The Insurance Company specifically pleaded the actual condition of Shipley, for several months prior to his making application for insurance, the fact that he had been ill, had been treated by a physician, had been to a hospital, that he was suffering from a cancer of the stomach, and was so advised by the physician who treated him, and that he died from the effects of a cancer.

The answer is full, complete and presents a good defense to any recovery upon the policy, if any of the material facts so pleaded are true.

The cause was tried to a jury, and before a charge was given by the trial court, the defendant requested the court to instruct the jury to find for it. The request was denied.

The jury made answers, in substance, as follows: (2) That Shipley was regularly performing the duties of his occupation on October 16th, 1937; (2a) that the failure of Shipley to regularly perform the duties of his occupation was not material to the risk assumed by the defendant company; (4) that Shipley was in good health on and prior to October 16th, 1937; (5) not answered, under the instructions as to the answer to 4; (6) that the representation made by Shipley, in his application, that he was in good health, was not fraudulently made; (7, 8, 9 and 9a) not answered, under the instructions as to the answer to 4; (10) that Shipley had not suffered with a duodenal ulcer on or prior to October 16th, 1937; (11) not answered under instructions as to the answer to 10; (12 and 13) not answered under instructions as to the answer to 11; (14) that the ulcer did not materially contribute to Shipley's death; (15) that Shipley did not have a cancer of the stomach on or prior to October 16th, 1937; (16, 17, 18 and 19) not answered under instructions as to the answer to 15; (19a) that the cancer was not material to the risk assumed by the insurance company; (20) that Shipley did not have any growth on or prior to October 16th, 1937; (21) not answered under instructions as to the answer to 20; (and 22 and 23) not answered because of instructions as to the answer to 21; (24 and 25) not answered under instructions as to the answer to 20; (26) from a preponderance of the evidence the jury found that the cause of Shipley's death was unknown; (27) that Shipley did not have any stomach disease on or prior to October 16th, 1937; (28) that Shipley's representation that he had not suffered from a stomach disease was not fraudulently made; (29) that the representation by Shipley with respect to a stomach disease was not material to the risk assumed by the insurance company; (30) that Shipley's stomach disease was not material to the risk assumed by the insurance company; (31) that Shipley's stomach disease which he had on or prior to October 16th, 1937, did not materially contribute to his death; (32) that Shipley's representation in his application that he had not consulted, been examined or treated by any physician or practitioner within the past five years was not fraudulently made; (33) that such representation was not material to the risk assumed by the insurance company; (34) that the jury "believed" that the Insurance Company would have insured Shipley if it had known the true facts concerning Shipley's consulting and being examined and treated by a physician, "within the past five years"; (35) that Shipley's representation that he had not had any sickness within the past five years for which he did not receive medical attention was not fraudulently made; (36) that such representation was not material to the risk assumed by the insurance company; (37) that Shipley's representation that he had not been a patient in a hospital or sanatorium was not fraudulently made; (38) such representation was not material to the risk assumed by the insurance company; (39) that the insurance company would have

insured Shipley even if it had known the true facts as to such representation; (40) that prior to October 16th, 1937, Shipley never had any infirmity; (41, 42 and 43) not answered because of instructions as to the answer to 40; (44) that from March 1st, 1937, to October 16th, 1937, Shipley did not have any sickness for which he did not receive medical treatment; (45 and 46) not answered because of instructions as to the answer to 44.

After the verdict was received, the defendant moved for a judgment notwithstanding the verdict and its motion was denied.

Motion for a new trial being timely filed and overruled, the cause is brought before us for review of the judgment rendered for the plaintiff on the verdict.

 At the very outset, we desire to say that we would not, in good conscience, permit this verdict and judgment to stand, because of the very nature of the verdict, and we want to draw a word picture of the verdict and show our reasons for such conclusion.

On the first issue submitted, the jury found that Shipley was regularly engaged in the performance of the duties of his occupation, on October 16th, 1937, and on the second issue, which was so worded that it required no answer unless the jury found that Shipley was not performing such duties, at such time, the jury found that Shipley's failure to perform such duties was not material to the risk assumed by the insurance company.

In answer to issue No. 10, the jury found that Shipley had not suffered from a duodenal ulcer on or prior to October 16th, 1937, and in answer to Issue 14, which, by its wording, required no answer unless the jury found that Shipley had the said ulcer, the jury found that the ulcer which Shipley had did not materially contribute to his death.

In answer to Issue No. 15, the jury found that Shipley did not have cancer of the stomach on or prior to October 16th, 1937, and in answer to Issue 19a, which required no answer unless the jury found that Shipley did have such cancer, the jury found that the cancer which Shipley had was not material to the risk assumed by the insurance company.

In answer to Issue No. 27 the jury found that Shipley did not have a stomach disease on or prior to October 16th, 1937, and in answer to Issue No. 30, which required no answer unless the jury found Shipley had the stomach disease, the jury found that the stomach disease which Shipley had was not material to the risk assumed by the insurance company, and in answer to Issue 31, found that the stomach disease which Shipley had did not materially contribute to his death.

An analysis of the verdict discloses conflicts in the answers which, because of the very wording of the issues, may not be reconciled, and it is fundamentally erroneous to render a judgment on such conflicting findings. Furthermore, the verdict shows on its face a desire to return a verdict for the plaintiff, regardless of the evidence.

Some of the findings have absolutely no support in the evidence and some are contrary to all of the evidence adduced.

 The undisputed evidence shows that Shipley was suffering from pains in his abdominal region as early as February or March, 1937, and that he consulted and was treated by Dr. Bailey Collins; that, between the time of the first treatment and the making of the application for insurance, Shipley went at least twice to a hospital and that his abdomen was swollen and Dr. Collins punctured it and withdrew a large amount of fluid. That Shipley steadily grew worse and died on November 28th, 1937.

Dr. Collins testified to the illness of Shipley and that he had Shipley to go to Dr. Milt Glover for an X-ray examination, on or about March 4th, 1937. Both said doctors testified that, after the examinations were made by them, they decided Shipley had an ulcer of the duodenal cap. Dr. Collins testified that he treated Shipley for an ulcer but that he did not respond to the treatment and he then knew there was something else causing Shipley's condition. Shipley was then X-rayed again on or about July 21st, 1937, by Dr. Glover, and both doctors testified that, after such examination, they diagnosed Shipley's case as cancer of the stomach.

Dr. Collins testified positively that he told Shipley then that he had cancer of the stomach and that he (the doctor) could not cure him and told him to feel free to go to any other doctor or place for treatment.

The proof of death introduced in evidence by the plaintiff, a part of which was

the certificate of Dr. Bailey Collins, shows that the cause of Shipley's death was cancer of the stomach.

According to the testimony of Dr. M. M. Walker, Shipley consulted him during the latter part of August, or the first of September, 1937, and that after giving him "the ordinary examination a man makes without an X-ray, that is, manipulation, palpation and history", this doctor said, in answer to the question, "Did he have any symptoms of a cancer that you could see?"—"Well, it wasn't my idea that he had a cancer. That wasn't what I told him and wasn't what I thought he had when I examined him. I told him very definitely I didn't think he did."

We have read the entire testimony given by Dr. Walker and we do not find where he ever testified to any conclusion of his as to what was wrong with Shipley. He disclosed no diagnosis, and although he was examined rather extensively concerning appendicitis, when he was asked, "Did you conclude he had a chronic appendicitis?" he answered, "Well I wasn't definite. I didn't make a definite conclusion about it except he asked me definitely if I thought there was any probability of cancer and I told him I didn't think there was."

This doctor testified that when Shipley came to him, he gave him a history of his case which he believed to be true and that, with his examination and the history given, he thought Shipley was a sick man, but not desperately ill.

Mrs. Shipley, the plaintiff, testified that she and her husband went to see Dr. Walker just to find out his opinion of Mr. Shipley's condition and not for treatment; that although Dr. Walker wrote him a prescription, Shipley never had it filled.

We can conceive of no motive that would prompt Dr. Collins to distort the facts, or to indulge in any language calculated to injure the plaintiff's cause, unless his testimony was truthfully given.

Dr. Collins was Shipley's personal physician. He felt close enough to him to call Shipley by his given name.

The high ethical plane, on which the average physician lives, is such that its very nature renders the physician extremely loyal to his patient.

We are inclined to reverse and render this case, but we do not want to do violence to any right that the plaintiff may have.

We are inclined to the opinion that the very unsatisfactory testimony given by Dr. Walker, who shows by his own statement that he made nothing more than a casual examination of Shipley, and the attempt upon the part of the plaintiff to impeach the testimony of Dr. Collins, is wholly insufficient to destroy the undisputed physical facts which show that Shipley was a sick man from early in 1937 up and until he made application for the insurance, and the testimony of Dr. Collins and Dr. Glover who made rather thorough examinations of Shipley.

In short, we are inclined to the opinion that such evidence adduced is not sufficient to take the case to a jury.

In Forrester v. Southland Life Ins. Co., Tex.Civ.App., 43 S.W.2d 127, in which a writ of error was refused, the opinion quotes from Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 318, 48 S.Ct. 512, 513, 72 L.Ed. 895, wherein the court said: "For even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure."

All of the evidence here discloses that Shipley had some character of disease or ailment, the seat of which was in his abdominal region, and all of the evidence shows that his death was the result of some disease or ailment suffered in such region.

Shipley knew he had it, and knew that he was both consulting and being treated by a physician for it, and admitting simply for argument's sake that the jury would be warranted, under this record, in finding that Dr. Collins never told Shipley that he was suffering from a cancer, and that Shipley had a right to believe and rely upon Dr. Walker's statement, that he had no cancer, nevertheless, Dr. Walker knew that Shipley was a sick man, and there is no testimony tending to show that Dr. Walker did not tell Shipley that he was a sick man and none that Dr. Walker told him that his illness was trivial or not serious.

In all fairness, should not Shipley have advised the insurance company of all the

facts, to the end that it could have made such inquiry and investigation as it saw fit to do, before the policy was issued? We believe so.

Because of expressions found and the language used in the opinion in American Central Life Ins. Co. v. Alexander, Tex. Com.App., 56 S.W.2d 864, we do not reverse and render.

▮ The trial court gave the following instructions in aid to the jury:

"The term 'good health' as used in this charge does not mean perfect health nor absolute perfection but is a state of health free from any disease or ailment that affects the general soundness and healthfulness of the system seriously or which materially contributes to the death of a person."

"The term 'disease' and 'infirmity' as used in this charge do not mean temporary bodily disorders of a minor nature but a condition which seriously affects the health of a person as is reasonably calculated to contribute materially to his death."

While appellee does not concede error in the charge, she does express some doubt as to its correctness and submits the record for our judgment thereon without contending that the charge is correct.

In Sovereign Camp, W. O. W. v. Derrick, Tex.Civ.App., 64 S.W.2d 982, 983, in which a writ of error was refused, we find the following language: "In an approved definition of the term 'sound health' by the Commission of Appeals, and which expression has been held to be synonymous with that of 'good health,' it is said not to mean perfect health, nor absolute perfection, but 'is a state of health free from any disease or ailment that affects the general soundness and healthfulness of the system seriously, that is, that the insured be not affected with a disease or bodily infirmity of a substantial nature, which affects the insured's general health, or which materially increases the risk to be assumed by the insurer.' Vann v. National Life & Accident Ins. Co. (Tex.Com.App.) 24 S.W.(2d) 347, 349; Pickens v. Security Benefit Association, 117 Kan. 475, 231 P. 1016, 40 A.L.R. 654, and annotations."

The insurance company was entitled to such an instruction.

▮ The trial court should not have given the following portion of the charge: "or which materially contributes to the death of the person." If the disease or infirmity can be said to materially increase the risk to be assumed by the insurer and the facts concerning such disease or infirmity are withheld and are not disclosed by the applicant, who knows them, this is a defense to recovery upon a policy issued under such circumstances.

▮ Furthermore, we believe that where an applicant for insurance is ill and goes to a physician for examination and treatment, even if the facts do not disclose that the applicant was advised as to his actual condition, or if there be doubt in the mind of the physician and in the mind of the applicant for insurance as to his real condition, it is the duty of the applicant to make such facts as are known to him, with respect to his illness, his treatment by a physician and his condition, known to the insurance company in such an application for insurance as was required of Shipley.

▮ We cannot approve the definition of "disease and infirmity" as given by the trial court, wherein the court ends the definition with, "a condition which seriously affects the health of a person *as is reasonably calculated to contribute materially to his death.*" (Italics ours).

▮ We find the following language in Vol. 24, Tex.Jur., para. 188, page 940: "The word 'disease', however, may include, and is often used to designate, ailments more or less trivial; and an insurance company may, if it elects, inquire about any ailment, and take a warranty concerning it, lest it may affect the risk, although it cannot be known that it will." This text cites Mutual Life Ins. Co. v. Simpson, 88 Tex. 333, 31 S.W. 501, 28 L.R.A. 765, 53 Am.St.Rep. 757.

It seems obvious to us that it cannot in justice and reason be held that in a case, such as is before us, the applicant for insurance is not duty bound to disclose to the insurance company, in the application for insurance, the fact of his bodily ailments unless the jury first finds that such ailment or ailments are reasonably calculated to have contributed to his death.

For the reasons given, the judgment is reversed and the cause remanded.