IVORY, Respondent v. RESERVE LIFE INSURANCE COMPANY, Appellant

(101 N.W.2d 517)

(File No. 9789. Opinion filed March 11, 1960)

**Hanley, Costello & Porter,** Rapid City, for Defendant and Appellant.

**Whiting, Lynn, Freiberg & Shultz,** Rapid City, for Plaintiff and Respondent.

ROBERTS, P. J. This action was brought against the Reserve Life Insurance Company by plaintiff claiming indemnity for hospital and surgical expenses. Plaintiff had a verdict for $734 and defendant appeals from the judgment rendered thereon.

Defendant denied liability in its answer alleging that plaintiff made certain false and fraudulent statements in

his application for the insurance upon which the defendant had relied and that if his answers to questions in the application had been truthful the policy would not have been issued. George Goetz, an agent representating the defendant company, solicited plaintiff for the sale of a policy. On January 26, 1956, plaintiff signed an application which includes the following questions and answers:

"6. Are you and all other members of the Family Group to be insured now in good health and free from any physical or mental defect? Yes
* &ast; &ast; &ast; &ast; &ast;

"8. Have you, any member of the Family Group to be insured, ever had any disease of the heart, lungs, kidneys, stomach, or bladder; or high blood preasure, paralysis, arthritis, syphillis, cancer, diabetes, hernia, goitre, or rectal disease? No. &ast; &ast;

"9. Have you, or any member of the Family Group to be insured, received medical or surgical advice or treatment within the past three years? No."

Defendant company accepted the application and issued to plaintiff a policy without a medical examination. Plaintiff testified that in 1936 he consulted a physician. The doctor informed him that he had a duodenal ulcer and prescribed the taking of Sippy powders. Because of this ailment, plaintiff was discharged from the army in September, 1943. About a year later, corrective surgery for the duodenal ulcer was performed. Plaintiff further testified that in the fall of 1953 he went to see a doctor who gave him "some tablets laying on his desk some agent had left" and told him "to take them try thew and he said if they do you any good you can buy them down here" at the drug store. On cross-examination, plaintiff testified:

"Q. Actually, Mr. Ivory, you have told us that you had an ulcer condition since 1936, is that correct? A. That's right.

"Q. And you've had these pains ever since that time off and on had you not? A. Yes.

"Q. And you knew that in 1944 you'd had an operation for an ulcer? A. Yes.

"Q. And when you had these pains as you did in '53 you decided that possibly you were getting to the point where you should look into this thing again, isn't that correct? A. Yes.

"Q. So that you went to Dr. Kegaries and consulted him in connection with this condition, right? A. Yes.

"Q. Now you attributed these pains to the fact that you had had this previous condition of an ulcerated stomach or intestine, didn't you? A. Yes.

"Q. And Dr. Kegaries confirmed that for you. A. Yes.

"Q. So that in 1953 on the occasion you have told us about when you went to see Dr. Kegaries you knew that you had ulcer. A. Well, I wouldn't necessarily say I had an ulcer, no, at that time. I had an ulcer before.

"Q. Well, you just told me, Mr. Ivory, that you attributed these gas pains to an ulcerated stomach or intestine? A. Yes.

"Q. Yes. So that in your mind at least you were pretty well convinced you probably had an ulcer, weren't you? A. Why, sure."

Plaintiff and his wife testified that plaintiff told the soliciting agent Goetz that he had had an ulcer and about the operation in 1944, and that he would "take out" a policy "providing there are no riders". In January, 1958, plaintiff suffered a severe ulcer attack, entered a hospital and an operation was performed and it is in this connection that the claim in the present action was made.

The jury found against the defendant. It is defendant's claim that the evidence was such that it was

entitled to a directed verdict. We think it necessary only to consider the effect of plaintiff's answer to the ninth question. It is the settled law that a material misrepresentation made by an applicant in reliance on which a policy is issued to him avoids the policy. Damgaard v. South Dakota Benev. Soc., 62 S.D. 533, 254 N.W. 924; Life Benefit, Inc. v. Elfring, 69 S.D. 85, 7 N.W.2d 133; Williams v. Black Hills Benefit Life Ass'n, 70 S.D. 611, 19 N.W.2d 769; see also Hohenthaner v. Mutual Life Ins. Co. of New York, 62 S.D. 8, 250 N.W. 370; Waltner v. Educational Mut. Ben. Ass'n, 66 S.D. 405, 284 N.W. 776. This is the application of the general rule in the law of contracts that where a party is induced to enter into a transaction with another party which he was under no duty to enter by means of fraud or material misrepresentation the transaction is voidable.

An annotation discussing the question of the materiality of a representation as to whether an insured has consulted a physician within a specified time prior to making application for insurance, 131 A.L.R. 618, states: "The importance of a false statement by an applicant for a policy of insurance as to whether he has consulted physicians lies in the fact that he conceals from the insurer the fact of such consultations and thus deprives it of the opportunity of making an independent investigation and of obtaining further information, so as to enable it to decide for itself, in the light of the additional information, whether to enter into the proposed contract or what premium to charge."

The consultation with or attendance by a physician contemplated by a question in an application for insurance refers to a consultation or attendance for such an ailment as would affect the contract and not to include a consultation or attendance for a minor or temporary ailment. See annotation in 63 A.L.R. 846. There could be no question of the serious nature of the ailments and the materiality of the representations in such cases as Damgaard v. South Dakota Benev. Soc., supra, (a heart disease

of which the insured died shortly after issuance of policy) and Life Benefit, Inc. v. Elfring, supra, (known lump in breast which proved to be cancer). False representation in an application for insurance is material to the risk if it is such as would reasonably influence the decision of the insurer as to whether it would accept or reject the risk. Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 6 Cir., 72 F. 413, 38 L.R.A. 33; Metropolitan Life Ins. Co. v. Carter, 252 Mich.432, 233 N.W. 370; Geer v. Union Mut. Life Ins. Co., 273 N. Y. 261, 7 N.E.2d 125; Lawien v. Metropolitan Life Ins. Co., 211 Minn.211, 300 N. W. 823.

 Plaintiff contends that the visit to the physician in the fall of 1953 was for a minor or temporary ailment and that the answer to question 9 was not a material representation. The uncontroverted evidence is that plaintiff consulted the physician for abdominal pains which he was fearful were caused by "an ulcerated stomach or intestine." We agree that the testimony of the witness for defendant that if insurer had knowledge of such consultation it would not have assumed the risk cannot be considered. Volunteer State Life Ins. Co. v. Richardson, 146 Tenn. 589, 244 S.W. 44, 26 A.L.R. 1270. The materiality of a false representation as we have stated must be determined by its probable and reasonable influence upon the insurer. In the case of Lyttle v. Pacific Mut. Life Ins. Co., 6 Cir., 72 F.2d 140, wherein the court considered a false representation that the insured had not consulted a physician because of an attack of indigestion and subsequent developments established that applicant had a stomach ulcer, it was held that the representation was material to the risk as a matter of law and avoided the policy. See also Demirjian v. New York Life Ins. Co., 205 Wis. 71, 236 N.W. 566; Anderson v. Aetna Life Ins. Co., 265 N.Y. 376, 193 N.E. 181; Aetna Life Ins. Co. v. Shipley, Tex.Civ.App., 134 S.W.2d 342; Lawien v. Metropolitan Life Ins. Co., supra. In view of the undisputed evidence, it may not be said that the false representation as to whether plaintiff consulted a physician was not material as an in-

ducement for the issuance of the policy and to the risk assumed.

The judgment appealed from is reversed.

All the Judges concur.