**D & P TERMINAL, INC., a Corporation, Plaintiff,**

v.

**WESTERN LIFE INSURANCE COM-PANY, a corporation, Defendant.**

**Civ. No. 933 N. D.**

United States District Court
D. South Dakota, N. D.

Feb. 1, 1966.

Austin, Hinderacker & Hackett, Watertown, S. D., for plaintiff.

Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for defendant.

BECK, Chief Judge.

The D & P Terminal Company, a corporation, as against the Western Life Insurance Company, also a corporation—hereinafter referred to as Terminal and Western—with all jurisdictional requirements met and none in dispute, is in this case seeking judgment to reform an insurance policy, changing specified effective dates to others allegedly correct, annexing thereto new application as a substitute for the one on August 4, 1959,

claimed to have been canceled on December 30, the same year and in the alternative, should reformation be found not to be necessary for purpose of recovery, judgment for the amount due on the policy issued on January 7, 1960 and ascertainment of the amount of insurance the paid premiums purchased on the date of issue at the age of fifty.

Defenses interposed aside from the usual general, are to the effect that issuance of the policy was regular, that premiums under its terms were to be paid on February 5, May, August and November of each year until premiums had been paid for five years and annually thereafter, that the May 5, 1961 premium wasn't paid on or before that date or within the grace period thereafter and that the policy for that reason had lapsed. Ratification of it by Terminal, is another defense, based on acceptance and confirmation of the policy and payment of premiums, and estoppel is one more.

Others, are false representations and fraud in procuring reinstatement after lapse because of nonpayment of premiums and in that connection the usual offers to restore on election to rescind.

Either of two alternative theories, according to Terminal, can be invoked to sustain such relief: (1) on Western's acts on December 30, 1959 being held a cancellation of Terminal's August 4, 1959 application and the insurance, on the proceedings the same day and thereafter being a new application for the policy issued on January 7, 1960, on the backdating of it and use of an insurance age of forty-nine instead of fifty rendering the issuance of the policy illegal, on the combined effect of all of those operations permitting Terminal to treat the policy as an insurance contract which did not come into existence until the date of actual issuance or not earlier than December 31, 1959, and (2) on there being no competent evidence under the doctor and patient privilege communication rule in connection with the reinstatement, after lapse, to justify denial of recovery.

Western, on the other hand, challenges the merits of that claim as well as the remedy on grounds: (1) that it issued the policy pursuant to the August 4, 1959 application and amendments to it; (2) that the remedy to have it reformed is not available; (3) that the policy conformed to the laws of the state; (4) that its terms in every respect represents the insurance contract which was made; (5) that the acts of Terminal and the insured from and after the application constitute ratification; (6) that the policy lapsed because of nonpayment of the premiums due May 6, 1961; (7) that the thereafter procured reinstatement was based on false representations and fraud and therefor void; (8) that Western after discovery made tender to Terminal of all premium payments made after May 6, 1961; (9) that all of Terminal's acts after the issuance and acceptance of the policy and payment of the first quarterly premium, with the procedure on the reinstatement and the premium payments thereafter included, are consistent with the terms of the policy as it is; (10) that Western properly and technically has exercised its asserted right to rescind and (11) that Terminal under all of the facts and circumstances in the case is estopped from claiming that the policy is something different from the one which was issued, accepted and thereby and thereafter allegedly ratified.

Reformation having been invoked it is for Terminal to bring itself within the statutory provisions governing that remedy, to show to what extent they are controlling on insurance contract cases and how under this record they are to be applied. On this, SDC 37.0601–3, 1960 Supp.:

*"Revision: fraud or mistake.* When through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

*"Substance: not form; object of revision.* In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be."

*"Equitable agreement presumed.* For the purpose of revising a contract it must be presumed that all the parties thereto intended to make an equitable and conscientious agreement.",

on the construction and use of those provisions as they are applied:

"Before a court of equity will undertake to reform a written instrument, so as to make it express a contract other than as expressed in the instrument, it must clearly appear that the minds of the contracting parties did not meet upon the proposition therein expressed, and that the actual contract made between the parties was other and different from that expressed in the writing, and that the writing came through fraud or mistake, and that plaintiff was not negligent. Heard v. Nancolas, 187 Iowa, 1045, 175 N.W. 13; Day v. Dyer, 171 Iowa, 437, 152 N.W. 53; Barnum v. White, 128 Minn. 58, 150 N.W. 227, 151 N.W. 147; Bates v. Bates, 56 Mich. 405, 23 N.W. 63; Pyne v. Knight, 130 Iowa, 113, 106 N.W. 505; 34 Cyc. 915.

"The grounds relied upon for reformation must be established by clear and satisfactory evidence. Richard-son v. Short, 201 Iowa, 561, 207 N.W. 610; Buntrock v. Hoffman, 178 Wis. 5, 189 N.W. 572; Lyons v. Chafey, 219 Mich. 493, 189 N.W. 86; Hallgren v. Becker, 94 Neb. 415, 143 N.W. 467.", Gould v. Nolen, 51 S.D. 472, 214 N.W. 853 (1927).

and on the point urged, should it be held to have merit, that the policy violates SDC 31.1610(3) [1]: "Reformation is not granted of void provisions in contracts * * *", Lacks v. Lacks, N.Y., 189 N.E.2d 487, 488. Again on the same point:

"Where a contract is void at law for want of power to make it, a court of equity has no jurisdiction to enforce such contract, or in the absence of fraud, accident, or mistake to so modify it as to make it legal, and then enforce it. Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law. They are bound by positive provisions of a statute equally with courts of law, and, where the transaction, or the contract is declared void because not in compliance with express statutory or constitutional provision, a court of equity cannot interpose to give validity to such transaction or contract, or any part thereof. * *", Hedges v. Dixon County, 150 U.S. 182, 14 S.Ct. 71, 37 L.Ed. 1044.

As for the use of that remedy to change effective dates also in connection with the same point, it is said in Wall v. Mutual Life Ins. Co. of New York, 228 Iowa, 119, 289 N.W. 901, 904 (1940):

"As to the first question the prayer of the petition is: 'Plaintiff prays

---

1. *"Provisions prohibited in other than standard forms.* No policy of life insurance in form other than as prescribed in sections 31.1601 to 31.1606, inclusive, shall be issued or delivered in this state, or be issued by a life insurance company organized under the laws of this state, if it contain any of the following provisions:
 (1) * * *
 (2) * * *

(3) A provision by which the policy shall purport to be issued or to take effect before the *original application* (emphasis supplied) for the insurance was made, if thereby the assured would rate at an age younger than his age at date when the application was made, according to his age at nearest birthday;
(4) * * *."

that said policy be reformed and corrected to conform to and correctly evidence and express the true and actual contract agreement of said parties and conform to the Statutes of the State of Iowa, by striking from said policy '14th day of June' and inserting in lieu thereof, said terminal end of the initial annual period of insurance and the date on which said second premium became due, fourth day of August, and payable within thirty-one days thereafter; that is to say, that the court strike from said policy the date of June 14th, as the date for the payment of the second and subsequent annual premium, and insert, in lieu thereof, the words August 4th, * * *.' "

"To entitle plaintiff to reformation such as prayed for in the petition it must appear that the contract does not express the true agreement of the parties. If it does not so appear, the contract must necessarily be controlling. To entitle a person to reformation there must be some showing of fraud, ambiguity, or mutual mistake. No question of fraud arises in this case, nor is there evidence of mistake. Plaintiff urges the well known rules of liberal construction in favor of the insured, the construction of contract of life insurance so as to avoid forfeiture, and the general rule for interpretation in favor of the insured. About these propositions there can be little doubt. But no question of construction arises in this case. The general rule is that, to warrant reformation the proof necessary must be clear, satisfactory, and convincing. Haugh v. Lanz, 187 Iowa 841, 272 N.W. 199; King v. Good, 205 Iowa 1203, 219 N.W. 517. Of course, there could not be mutual mistake and fraud, since these claims would be mutually destructive. See Seymour v. Chicago & N. W. R. Co., 181 Iowa 218, 164 N.W. 352. From an examination of the record we find no evidence which would warrant a finding of either fraud or mutual mistake."

██ The outcome of the case, thus in part having been postured on application, cancellation, legal effect of the issuance, manual delivery, acceptance and payment of premiums in compliance with its terms up to May 6, 1961, or on a combination of those factors, the court finds each and all of the events between the contracting parties to that date and from August 4, 1959 to have been inter-related component parts, with the August 4 application treated as the "original", Western's proposed changes when accepted, as amendments, and the policy as a merger of the whole and as a meeting of minds on all terms covered by that instrument.

Within that setting the court finds Terminal's August 4 application as its original for a five-year convertible and renewable term insurance, acted on when received but only to the extent of calling attention to company requirements for certain extra medical examinations when the insurance applied for exceeds $25,000, legal rules for a letter of corporate authority, SDC 31.1519, a health certificate and the form of policy it could and would grant. Along with it, expressions of willingness to complete the transaction and suggestions for early compliance with the conditions specified and in that connection, use of fixed cancellation dates, shifted ahead as each deadline was reached, the first one on November 13, noting that the "cancellation deadline" had passed but would be extended "two weeks", another November 25 again upping the period and fixing December 15 as the next, followed by one on the 17th, that December 30 was the last, with this comment: "I might mention that the only thing we need in order to give you underwriting action is the corporate letter requested some time ago", on that day "canceled" stamped on an insurance

form in Western's file and one more letter:

"December 30, 1959

Mr. Louie H. DeWall

812 N. Park

Watertown, South Dakota

Dear Mr. DeWall:

It has now become necessary to cancel your application for life insurance; and we find it regrettable, because we would like to be able to provide you with the protection for which you applied on August 3, 1959.

Since our files are incomplete, we cannot issue the insurance protection for which you applied. Even though time and circumstances would not permit you to complete these papers now, we would like you to know that we stand ready to help you at any time.

In cancelling your application, it is our desire to impress you with the fact that we are not acting arbitrarily, but we are required by law to dispose of all applications which are not acted upon within a specific period of time.

As no premium payment was made when the application was signed, we will consider the case closed as of this date.

Yours very truly,

Underwriting Department
R. A. Johnson

RAJ/cp

Plaintiff's Ex. 18".

2. "Western Life Insurance Company
HEALTH CERTIFICATE
Policy No.

I hereby represent that, since the date of the application or the date of furnishing evidence of insurability, whichever occurred first, for the above policy in the Western Life Insurance Company, I have not had or needed any medical advice nor has there been any material change in my physical condition, mode of life, habits, occupation or participation in aviation activities except as stated below. I do not contemplate any change of residence or occupation, except as follows: None .

In the minutes of the meeting of the Board of Directors of Terminal at Fargo, North Dakota, the same day at the hour of ten A.M., there is the following related excerpt:

"Discussion of the insurance for Louie DeWall was then held, and after this discussion John G. Potter moved that the following resolution be passed:

Be it resolved by the Board of Directors of D & P Terminal Inc that the company purchase a policy of insurance on the life of Louie DeWall in the amount of $40,000.00, and that D & P Terminal Inc to be named the beneficery [sic] of said policy.

We further resolved that D & P Terminal Inc pay the premium on said policy in quarterly payments and that the officers of the corporation be authorized and directed to secure such policy and make the premium payments thereon.

The motion was carried unamimously [sic].", that same day the health certificate [2] and on the next day a letter on Western's letterhead from its general agent:

"31 Dec 1959
Re: Louie H. DeWall
Pending

Dear Mr. Grimes,

Confirming our telephone conversation, please issue subject policy on 5 yr conv & renewable term basis; premiums payable quarterly, effec-

I have not applied to an agent, company, association or order for any policy, or for reinstatement of a lapsed policy, which was refused or issued on a plan or for an amount or at a rate different than applied for, except as follows: None .

Failure to list exceptions means that none exists.

Dated at Watertown, S. Dak., this 30 day of December, 1959.

Louie H. DeWall
(Signature of Insured)

H. K. McClintic
(Witness to Insured's Signature)
Plaintiff's Exhibit 5"

tive date 5 Nov 1959, Agent of record is H. K. McClintic, beneficiary and owner of contract is:

D & P Terminal, Inc
807–2nd Ave. South
Fargo, N. Dak.

I am inclosing copy of the minutes of Corp authorizing purchase also a current Health Certificate signed by Insured.

Please expedite issuance of policy so we can collect first quarterly premium and place policy in force.

Thank you,
John Davies

(Rate quoted your letter
Nov 25, 1959.)
Plaintiff's Ex. 19"

Western's acts of stamping the insurance form "canceled", its confirming letter on December 30, and its use in the build-up for the reformation, must as they are contextually evaluated, be construed as ostensible, only, designed, as were the earlier threats of such action, to hurry completion, but if interpreted as actual, one which was forgotton, abandoned or at least impliedly vacated the same day or the next and from then on, disregarded as Terminal on the same day met the remaining two conditions, as Western resumed, as the policy was issued [3] and delivered and as Terminal thereafter made the quarterly premium payments during the applied for premium periods. Other appellations descriptive of this ruse: an expedient or a sales gimmick not to impede but to promote the cause of insurance, a pause in the chain of events to engender haste because of fear that the insurance merchandise might be withdrawn, all to the end of injecting speed in furtherance of Western's insurance holdings, and not for any other established purpose.

Terminal, by a preponderance of the evidence, having failed to prove a prima facie case on its defense of cancellation, the court holds the arguments and contentions thereunder submitted not admissible or material in conjunction with other defenses which have been ad-

---

[3].

WESTERN LIFE
INSURANCE COMPANY

Helena, Montana

No. 258897 Age 49

WILL PAY * * * Forty Thousand * * * DOLLARS
TO THE BENEFICIARY

D & P Terminal Incorporated, a Fargo,
North Dakota, a South Dakota corporation,
employer of

THE INSURED

Louie H. DeWall

immediately upon receipt of due proof of the death of the Insured while this Policy is in force.

The consideration for this insurance is the application for this Policy, which is made a part hereof, and the payment in advance of the Quarter annual premium of Two Hundred Four and $\frac{44}{100}$ Dollars and the payment of a like premium on the 5th day of February, May, August, November in every year until premiums have been paid for five years from the date this Policy takes effect, and the amount of $2,071.60 annually in advance thereafter until the prior death of the Insured.

CONVERSION PRIVILEGE

This Policy is a Term Insurance Policy during the first FIVE YEARS. At the end of such five years, upon payment of the increased premium pro-

vanced, Columbian Nat. Life Ins. Co. v. McClain, 115 Colo. 458, 174 P.2d 348, 169 A.L.R. 278 (1946), relied on by Terminal as "the closest on the facts", to the contrary, notwithstanding, since it isn't in point either on the facts or the law, or the statutes of this state or as far as the court has been able to ascertain not compatible with those in any other jurisdictions.

Reformation, too, must be denied, absent, cancellation and the thereon projected concepts of a new application, illegal back-dating, the subsequently closed insurance contract not a meeting of the minds, with the resulting loss of the other arguments used to sustain. Present, on the other hand, proof of an "original application" the day before the insurance contract should take effect, a provision [4] in it that it would be a part of the policy as of the date which would appear on its first page, accompanied by unchallenged proof that the applicants met the imposed conditions, agreed on the modifications, accepted the policy as it is, took delivery, paid the quarterly premiums before and after the lapse and the reinstatement and that it wasn't questioned until now, is unequivocal on the point that the remedy of reformation may not be invoked, but since it has not one to be granted. SDC 37.0610–3, 1960 Supp., SDC 31.1610(3), Gould v. Nolen, Hedges v. Dixon County, Wall v. Mutual Life Ins. Co. of New York, supra, and the cases and authorities therein cited.

Not overlooked and deserving of comment, is the claim used in the argument to reform of alleged conflicts in the terms of the policy fixing its effective date, amounting to an ambiguity to be resolved in favor of the insured. This is on the language in the application:

vided above, this policy will automatically be converted into an Ordinary Life Policy.

The privileges, benefits and provisions printed and written on the following pages by the Company are made a part of this Contract, as fully as if they were recited at length over the signatures hereto affixed.

EXECUTED at Helena, Montana, to take effect on the 5th day of November 1959, which is the date of issue of this Policy.

WESTERN LIFE INSURANCE COMPANY

[Company seal]

W. B. Richardsen

ATTEST:

President

Alex Wardlaw
Ass't Secretary

FIVE-YEAR TERM WITH CONVERSION TO
ORDINARY LIFE
Non-Participating

Form F–16
4–1–59 2M

Examined by mp HM"

---

4. "(a) That this Part I together with Part II and any supplement or amendment to either, made by the proposed insured, the applicant, or jointly, shall be the application for, the basis of, and a part of any policy issued hereon.
(b) That the insurance applied for in this application, unless effective under the provisions of the receipt attached hereto, shall not be considered in force until a policy is issued and manually delivered to the proposed insured, or to the applicant, if other than the proposed insured, and the first premium paid thereon in full while the health, habits, occupations and all other material conditions of insurability of the proposed insured remain as described in this application, and if so delivered, said policy shall be deemed to have taken effect as of the date of issue stated on the first page hereof."

" * * * *that the insurance applied for in this application * * * shall not be considered in force until a policy is issued and manually delivered to the proposed insured * * * and the first premium paid thereon in full * * *"*, hence, January 7, 1960, or thereabouts, as against the policy date November 5, 1959. (Emphasis supplied).

Difficult to sustain but easy to answer as attention is centered on the qualifying language: "* * * and if so delivered, said policy shall be deemed to have taken effect as of the date of issue stated on the first page thereof.", and on that arrangement being observed, on that page: *"EXECUTED at Helena, Montana, to take effect on the 5th day of November 1959, which is the date of issue of this policy"*. (Emphasis supplied).

More on this same point and on another that the applicants during the intervening period were without insurance coverage and the contract during that interim void for want of consideration, is in Lentin v. Continental Assurance Co., 412 Ill. 158, 105 N.E.2d 735, 44 A.L.R.2d 463 (1952) and in the Annotation, 44 A.L.R.2d, at 472, with an introductory comment at 474:

> "It is common practice for life, health, or accident insurers to stipulate in their policies a date, usually the date of application or date of actual execution of the policy, from which it 'takes effect' and from which premium periods are calculated, but to provide also that the insurer shall not be liable under the policy until or unless some later validating event occurs."

and another on page 475:

> "It has frequently been recognized that the claimant is in no position to contend that the policy is ambiguous where the insured has demonstrated by his own conduct that he consciously accepted the date stated in the policy as controlling for premium payment purposes, and such

acts of the insured as payment of subsequent premiums on that date, or applications for reinstatement after failing to make such payments, have frequently been relied upon to evidence such a practical construction of the contract by the parties. However, cases may be found where the courts have refused to give controlling effect to one or more of these acts on the part of the insured."

> "It is clear that where the insured expressly requests that the policy be predated, realizing that he is thus paying premiums for a period during which he is not protected, and receiving a quid pro quo for such payments, such as a reduced age for premium rate purposes, no inequity is involved and there is no ambiguity arising from the situation. And a number of courts, in holding that the stipulated policy date controls over the later date of the validating event have pointed out, as supporting that conclusion, that the insured receives certain benefits from the use of the earlier date, since accumulations under the policy are also usually computed from that date, as are the periods during which the policy is contestable for suicide or other reasons".

See also comments in other cases referred to in that Annotation which includes Lyke v. First Nat. Life & Accident Ins. Co., 41 S.D. 527, 171 N.W. 603 (1919) regarded by this court as not in point, also the following on page 499:

> "The insured having requested that the policy be antedated to November 11, so that he would secure a lower premium rate computed on his age at that date, it was held in Johnson v. Mutual Ben. L. Ins. Co. (1906, CA 8th Neb) 143 F 950, that although the policy was not actually delivered or the first premium paid until the following January 15, the premium date stated in the policy controlled,

and that upon a failure to pay one of the subsequent premiums on the 11th of November, the policy lapsed. The court pointed out that it had been the practice of the parties to pay succeeding premiums on the date stated in the policy, and said that while it was not of vital importance to determine the motives of the parties in the adjustment of the premium payments, it was fairly inferable that the insured was willing to allow his first premium payment to cover a short period so that he might be accepted as of a lower age."

Finality on these points, it seems, is in New York Life Ins. Co. v. Silverstein, 53 F.2d 986 (8 Cir. 1931), first, a headnote:

"Life policy provisions fixing effective date of policy and due dates of premiums held controlling, though application provided policy should not take effect until delivery and payment of first premium, and alleged belated first payment did not postpone subsequent due dates so as to prevent lapse, especially where insured obtained lower rate because of earlier effective date."

and then a comment at page 989:

"There is no real inconsistency between these above-quoted provisions in the policy and the provision in the application to the effect that the policy should not take effect until its delivery and the payment of the first premium. The policy definitely provides that the premiums following the first shall be due on definite dates, or at the expiration of definite periods. These contract provisions must control. McCampbell v. New York Life Ins. Co. (C.C.A.) 288 F. 465; McConnell v. Provident Savings Life Assur. Society (C.C.A.) 92 F. 769; Sellars v. Continental Life Ins. Co. (C.C.A.) 30 F.(2d) 42."

"Even had the policy not become effective until July 11, 1927, still the subsequent premiums became due on the dates provided in the policy, and if the premium due September 28, 1928, was not paid on that date, or within the thirty days' grace period allowed, the policy by its terms lapsed. This position is further enforced by the fact that the insured obtained the benefit of a lower rate for the insurance by reason of its having taken effect at the earlier date, to wit, March 28, 1927, rather than at some later date, depending on payment of the first premium." Johnson v. Mutual Benefit Life Ins. Co. and McCampbell v. New York Life Ins. Co., supra.

■ Other compelling arguments and reasons why the policy must be held to have taken effect as of the date stated on its first page, are in the case of Rosenthal v. New York Life Ins. Co., 94 F.2d 675 (8 Cir. 1938):

"It is to be remembered that modern life insurance involves something more than indemnity in case of death. The insured's contributions build up reserves, surrender values, and loan values, and entitle the insured to dividends. In some forms of life policies, the investment and savings features overshadow death benefits.

It is a sound and well-established rule that the date of issue of the policy and dates when premiums are due are to be taken as those agreed to by the parties in the policy. citing cases. As has been pointed out, in many of these cases there is no inconsistency created by the provision of the contract that the insurance shall not become initially effective until the policy is delivered and the first premium is paid. It is true that if the insured dies before the delivery of the policy and the payment of the first premium, his beneficiary will collect nothing. On the other hand, the insurer has received nothing up to that time, and the purpose of the provision is doubt-

less to prevent persons who cannot pay for insurance from securing insurance on their lives for short periods without consideration. There is nothing to prevent an insurer and and an insured from agreeing that the insurance contracted for shall not take effect until the policy, the written evidence of the agreement, is in the hands of the insured and until the insured has made his initial payment, and that when those events have occurred the policy shall be fully effective from the agreed date of issue for all purposes. This agreement, if the initial premium is paid at a later date than the agreed date of issue of the policy, may result in the insurer receiving compensation for a period during which no liability was imposed upon it. On the other hand, upon delivery of the policy and the payment of the first premium, the insured secures those advantages which flow from having the policy become effective as of the earlier date. This affects the period of its contestability, its loan and surrender values, dividends, and, in some instances, the rate of premium. The provision also affords the insured an opportunity of ascertaining in advance of the payment of any premium whether the policy which is delivered to him is the policy for which he applied and for which he desires to pay."

Encompassed within what is left for examination on Western's asserted right to rescind after reinstatement are the controlling statutes, SDC 31.0517, 31.0518 and SDC 10.0804:

*"False representation; effect.* If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract, from the time when the representation becomes false."

*"Materiality representation determined.* Materiality of a representation is determined by the same rules as materiality of a concealment."

*"Rules governing rescission.* Rescission, when not affected by consent can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

(1) He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, undue influence, or disability, and is aware of his right to rescind; and

(2) He must restore to the party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

the application for the reinstatement:

"This blank is to be used in connection with the ownership form of policies only, male and female.

### WESTERN LIFE INSURANCE COMPANY

Helena, Montana

Re: Policy No. 258897

The above numbered policy in your Company, issued on my life, having lapsed I hereby represent that since the date of the issuance of said policy, I have not had or needed any medical advice; that there has been no material change in my physical condition, mode of life, habits, occupation or participation in aviation activities, except as follows:

No Exceptions
(If no change, write "No Exceptions")

That no company has issued me a policy on a different form from that originally applied for and that I have not been declined for new insurance or for reinstatement by any company.

My occupation is Executive Secretary My duties are _____

My employer is D & P Terminal My business address is 2900– 12th Ave. No. Fargo, N. D.

I live at 812 North Park Street Watertown
 (Street and Number) (City) (County)
South Dakota and have resided there for 12 years.
 (State)

If in country state distance _____ miles in a _____ direction on _____ road or route. Have lived there for _____ years.

I deal with (name of merchant or bank) Merchants National Bank, Fargo, North Dakota

Dated at Fargo N. D. this 19 day of July 1961

C. L. Gange Louie H. DeWall
 Witness Louis H. DeWall_____Insured

Application for Policy No. 258897

IN THE

Western Life Insurance Company

Helena, Montana

On the life of Louie H. DeWalt

To Be Put Back Into Force

I hereby agree that reinstatement is not effective until this application is approved by the Company at the Home Office and a copy hereof, which shall be furnished me by the Company, is attached to said policy. I agree that the provisions of the policy in respect to contestability and suicide are renewed and are effective as of the date of reinstatement rather than as of the date of issue of the policy; and that the foregoing representations and agreements shall be the consideration upon which the above numbered policy is reinstated.

| Shian Dahl | C. A. Potter pres. | |
|---|---|---|
| Witness | D & P Terminal, Inc. | Applicant and |
| | 2900–12 Ave. No., | Owner |
| | Fargo, North Dakota | |

Date July 19, 1961",

———◆———

testimony by two doctors, Parry S. Nelson and Thomas W. Reul, one a physician and surgeon, the other an internist, both of Watertown, limited strictly to the information that the insured consulted Nelson on September 16, 1960, Reul on May 11, 1961 and June 12, and a record showing the insured under the care of Reul to have been hospitalized from June 7, 1961 at 2:10 P.M. to the following afternoon at 3:30.

 Testimony by doctors, one a physician and surgeon, the other an internist, limited to information that they were consulted by the insured, two, while the reinstatement was under consideration, and one before, coupled with a hospital record, considered only from the standpoint of showing a patient status for twenty-four hours, demonstrably is sufficient to prove the answers in the application for this reinstatement to have been false and for that purpose competent. VIII Wigmore, Evidence (McNaughton rev. 1961) Sec. 2384, 846–47: "But it is the *tenor* only of the communication that is privileged. The mere *fact of making a communication,* as well as the *date* of a consultation and the *number of consultations,* are therefore not privileged from disclosure, so long as the subject communicated is not stated.", with numerous supporting cases from several states cited in the footnote, including the following: "Lincoln Nat. Life Ins. Co., v. Hammer, 41 F.2d 12 (8th Cir. 1930) (testimony of physician that he had been consulted held not privileged under North Dakota law); Eureka-Maryland Assur. Co. v. Gray, 74 App.D.C. 191, 121 F.2d 104 (1941) (fact that physician had attended and treated patient held not privileged); In

re Albert Lindley Lee Memorial Hospital, 115 F.Supp. 643 (N.D.N.Y.1953) (hospital records reflecting merely the names of patients and their physicians not privileged)."

Bushfield v. World Mut. Health & Acc. Ins. Co. of Pa., 80 S.D. 341, 123 N.W.2d 327 (1963), holds such evidence sufficient to meet the requirements of a prima facie case on the reinstatement and the policy being voidable at the instance of the insurer as it declares: " * * * the question of materiality does not depend upon what applicant may have deemed to be of no consequence.", citing 131 A.L.R. 617 and: "It is clear that a false representation as to a material matter renders a policy voidable without showing that * * * the misrepresentation had a casual connection with the disability claimed under the policy."

Other authorities referred to in the opinion are to the same effect, as Ivory v. Reserve Life Ins. Co., 78 S.D. 296, 101 N.W.2d 517 (1960) on the reasons why false answers satisfied the requirements of material misrepresentation:

> "The importance of a false statement by an applicant for a policy of insurance as to whether he has consulted physicians lies in the fact that he conceals from the insurer the fact of such consultations and thus deprives it of the opportunity of making an independent investigation and of obtaining further information, so as to enable it to decide for itself, in the light of the additional information, whether to enter into the proposed contract or what premium to charge."

and that:

> " * * * False representation in an application for insurance is material to the risk if it is such as would reasonably influence the decision of the insurer as to whether it would accept or reject the risk."

and as the court in the same case concludes:

> "In view of the undisputed evidence, it may not be said that the false representation as to whether plaintiff consulted a physician was not material as an inducement for the issuance of the policy and to the risk assumed."

also Jenkins v. Metropolitan Life Ins. Co., 171 Ohio St. 557, 173 N.E.2d 122 (1961):

> "The authorities generally indicate that, where it has been established that in an application for a policy of life insurance an insured has given an untrue negative answer to a question whether he had consulted a physician within a specified number of years and such insured or someone else claiming under the policy contends that the insurer has not clearly proved that such answer was willfully false and fraudulently made because the consultation was not for or not known by the insured to be for any serious ailment or condition, *the one claiming under the policy has the burden of going forward with evidence tending to prove (if not the burden of proving) that such consultation was not for or not known by the insured to be for any serious ailment or condition.*" citing numerous cases including Connolly v. Equitable Life Assurance Society of United States, 62 S.D. 196, 252 N.W. 493 (1934). (Emphasis supplied).

and in Travelers' Ins. Co. v. Pomerantz, 246 N.Y. 63, 158 N.E. 21:

> "Plaintiff proved its case prima facie to the effect that the misrepresentation was material when it showed that within five years defendant had received medical attention a dozen times, that at least one medical consultation had been held, that digitalis had been prescribed in July, 1920, and that defendant was 'sick' (Klein v. Prudential Ins. Co. of America, 221 N.Y. 449, 117 N.E. 942) when he received attention. It could not compel him to waive his privilege arising from his relation to his physicians and force them to disclose the diagnosis and the nature

of the treatment. He may insist upon this privilege, but he cannot be heard to claim that no prima facie case has been made out. He produced no witnesses and gave no evidence concerning vital facts which could be disclosed only by him. As a witness called by plaintiff, he testified in respect to a few formal matters. He neither denied nor explained the untrue statement in his application, and he gave no information concerning the state of his health at the time of his medical attention or on the dates of his application or of his payment of the first premium. To hold that the proof under such circumstances is less than prima facie would be to condone and encourage misrepresentations and to impose upon a litigant conditions impossible of fulfillment. Plaintiff proceeded as far as the law allows and far enough, in the absence of denial, to require a finding of material misrepresentation. All evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted. Blatch v. Archer, 1 Cowper, 63, 65; Kirby v. Tallmadge, 160 U.S. 379, 383, 16 S.Ct. 349, 40 L.Ed. 463; Jordon v. Decorative Co., 230 N.Y. 522, 526, 527, 130 N.E. 634. The finding to the effect that defendant received no medical attention for any bodily or mental disease is based, as we think, upon a wrong interpretation of the contract and is, therefore, immaterial. The finding that he received none material to the risk is subject to the same objection, is in effect a conclusion of law, and, moreover, is without evidence to support it. There was proof to the contrary and no rebuttal. Plaintiff produced evidence to show that the facts concerning which defendant made his misrepresentation were such as, if known, might have deterred it from accepting him as a risk. Eastern Dist. Piece Dye Works v. Travelers' Ins. Co., 234 N.Y. 441, 138 N.E. 401, 26 A.L.R. 1505, supra. Suppose this applicant had truly answered statement 12 and admitted that he had received medical attention twelve times from five physicians, but then stood upon his rights and refused to state the nature of the attention or the names of his doctors. What chance would he have had to obtain a policy? If, on the contrary, he had stated that he had been treated even once for some form of heart disorder, almost certainly his application would have been rejected. We do not say that legal proof of such treatment is in the record. We make the supposition to illustrate the necessity of a truthful statement by an applicant and to emphasize the materiality of the misrepresentation."

■ Under Bushfield, the cases and authorities therein relied on and the others which have been stressed, it is the settled law of this state that false answers as to medical history in an application for life insurance, or as in this case for reinstatement, constitute material misrepresentations, prima facie sufficient to show the reinstatement and the policy voidable, and procedurally, as that stage is reached in a trial, a shifting of the burden of proof to the claimant to go forward with the evidence and upon failure, *voidable* standing sustained.

■ Accordingly, and on the record that Western relied on the answers and that it has complied with the statutory provisions for tender and conditions not dealt with regarded as having been covered by the deposition of the others that have, it is held that Western's asserted right to rescind has been established and that it is entitled to such relief, with payment of the amount of the tender to be made to the attorneys for Terminal, or in the event of refusal to accept to be deposited with the clerk. This decision will be regarded as the court's findings of fact and conclusions of law.

Let judgment with costs to Western forthwith be entered by the clerk.