MARGARET TAYLOR GETSINGER, Appellee, v. UNION MUTUAL LIFE INSURANCE COMPANY of Iowa, Appellant.

No. 41642.

MARCH 7, 1933.

REHEARING DENIED JUNE 23, 1933.

Harold S. Thomas, for appellant.

Maxwell & Ryan, for appellee.

EVANS, J.—The defendant submits its appeal upon the sole question as to whether its motion for a directed verdict should have been sustained. It does not ask a review of mere errors, if any, committed upon the trial. Its contention is that the evidence of

fraudulent representations is conclusive, and that the trial court erred in overruling its motion for a directed verdict.

The defendant is a life insurance company with its principal office in the city of Des Moines. It solicits its business by mail and not through the personal efforts of agents. The insured in this case was T. R. Getsinger, a bank cashier, in Johnson City, Tenn. The method of approach to a "prospect" adopted by the defendant has in it some degree of indirection. In some manner, not disclosed in the record, the defendant obtained the name of the insured as a prospect. It mailed to him a postal card, the face of which was covered with typewritten matter with certain blank spaces left therein. It requested the insured to fill in the blank spaces and to sign the card as a whole and return the same. The following is a photostatic copy of the face of the card after the blank spaces had been filled by the insured:

XEPI 1000 - Age 41-1453- 7.02 T.R. GETSINGER 5.02

# 12855 FREE EXAMINATION

NOV - 51926

Wm. Schulz, Jr., President,
Union Mutual Companies,
Des Moines, Iowa.

Dear Sir:

Send me one of your $1,000.00 Policies. I'll look it over and tell you later whether or not I want it. Without obligating myself I do hereby declare that I am in sound health and to the best of my knowledge and belief have no disease or ailment not fully set forth herein, and that my habits in life are correct and temperate. I agree that the foregoing statement, and the statements below, and on the reverse side of this card, shall form a part of the policy.

Date................ Nov. 2, 1926.

Age 41 ..... Date of birth 3/11/86 Place of birth Jamesville, White, N.C.

Height 5 feet 11 inches Weight 170 lbs. Sex Male Eyes ..........

Describe Occupation Cashier, The Peoples Bank, Johnson City, Tenn.

I am not deformed; I have had no bodily or mental disease nor have I received medical or surgical attention within the past five years, except as herein stated; February, 1924, Over-worked, took rest under Doctors instruction for 30 or 60 days. Have been working ever since, and feeling fine.

I have not been postponed or rejected, or requested to pay an abnormal rate for life insurance, except by Mutual Life Insurance Co. of N.Y. Company, date Sept. 1925.

Reason for Rejection or Postponement if known Slightly abnormal Blood Pressure.

Name of Beneficiary Margaret Taylor Getsinger

Relationship My wife Address Johnson City, Tenn.

Signature... Box 131 [signature]

Address Johnson City, Tenn.

A $2,000.00 Policy will be prepared for your consideration if checked here. ☐

The back of the card was covered with printed matter purporting to be "General Agreements" and purporting to constitute an application for insurance.

In this form the card was returned to the defendant. The defendant's response thereto was the following letter:

"Dear Mr. Getsinger: I thank you sincerely for the kind consideration you have given to our president's correspondence descriptive of the life insurance opportunity offered by the Union Mutual Life of Iowa. Upon reviewing your application, as a preliminary to its approval of the issuance of a policy, our Medical Director observed an impairment, outlined in your application as *abnormal blood pressure*. Our Doctor Gray suggests that the issuance of the policy be postponed for six months, at which time, on condition that your recovery has progressed without complications of any kind, we would be enabled to prepare for you at the standard rate, without restrictions or limitations of any kind. We are, accordingly, filing your application for further consideration six months from the date of its receipt, November 5, 1927, etc.

"Yours cordially,

"C. G. Schulz, Secretary."

At this point the correspondence was suspended until on or about May 17, 1927, when the insured received from the defendant company a purported "Warranty of present health and condition". The insured was requested to fill in certain blank spaces and to return the paper duly signed. Such paper with blanks duly filled was signed and returned as requested to the defendant. The matter inserted in the blank spaces is indicated herein by italics. In such form it was as follows:

"Union Mutual Life Company of Iowa.

"Warranty of Present Health and Condition

"Policy No....................

*May 17, 1927*

"I, *T. R. Getsinger*, of *Johnson City, Tenn.* hereby warrant that I am at this time, in all respects, in good, sound and unimpaired health and condition; that I have not, since the date of my application, except as recorded below, consulted any physician, surgeon, or other practitioner, respecting my mental or physical health and condition; and it is understood and agreed that if settlement of

said premium is accepted by said Company, it shall be solely in consideration of the warranties herein made.

"Date of last attendance, *Feb. 1927*

"Physician's name, *Dr. E. T. West*

"Name of disease or accident, *Cold*

"Duration of sickness or accident, *Two days*

"Witness, *S. J. Rose.*

"Signed—*T. R. Getsinger*"

The foregoing comprises all the preliminaries preceding the issuance of the policy on June 7, 1927. On December 30, 1927, the insured was taken with sudden and severe illness from which he never recovered. He was taken to a Philadelphia hospital and was operated upon for the removal of his gall bladder. He died on May 20, 1929.

I. The alleged false representations charged by defendant in its answer are contained in the two papers signed and returned by the insured to the defendant company and dated respectively November 2, 1926, and May 17, 1927. The defendant in its answer charged as follows:

"That said assured knew that instead of a slightly abnormal blood pressure, he was suffering a highly abnormal blood pressure ever since February of 1924 and had been so advised by Dr. West.

"The assured further knew that during the five years preceding May 17, 1927, he had suffered an attack of typhoid fever, an attack of flu; that he had had an operation for the removal of his tonsils in an effort to lower said blood pressure and remove the cause therefor, for which he had consulted three different physicians, all for a serious impairment and condition of his health."

The evidence on behalf of the insured disclosed the following medical history: In 1912 the insured, then twenty-six years of age, suffered an attack of typhoid fever, from which he fully recovered. From such date until February, 1924, he suffered no physical disability that interfered with his daily work. He did have at all times an abnormal blood pressure. The family physician had never been able to determine the cause of it. He suffered an illness in February, 1924, and was in the care of his physician for 30 or 60 days. During this period his tonsils, being in bad condition, were removed. He thereafter improved promptly and resumed his regular work.

From that time until December 30, 1927, he had not lost a day from his regular work. He had, however, been under medical treatment for two days in February, 1927. He diagnosed his own indisposition as a "cold". As against the foregoing Dr. West testified to certain dates that he treated the insured in the year 1927. This testimony of Dr. West was corrected by Mrs. Getsinger. The doctor's testimony was predicated simply upon the dates of charges in his books. Mrs. Getsinger testified that all those charges save two days in February were incurred in connection with her own illness. This testimony of the wife was not challenged by the doctor. Even if it had been, it would not remove the issue from the domain of the jury. The defendant's allegation that the insured had an attack of typhoid fever within the 5-year period preceding May 17, 1927, is without support. Such attack was in 1912. The so-called "attack of Flu" charged in the answer was had in February, 1924, when the insured was under the care of the doctor for a period of 60 days. It was at that time that the operation upon the tonsils was had. The defendant in its answer charges false representation in the use of the words "slightly abnormal blood pressure". The jury could find that the use of the word "slightly" expressed the honest hopefulness and optimism of the insured. Be that as it may, he did report that he was rejected by the Mutual Life Insurance Company because of abnormal blood pressure. The defendant in its letter of response interpreted it in just that language: "Abnormal Blood Pressure". The defendant through its medical department should be deemed to know the dubious and sinister meaning of abnormal blood pressure. Because of such blood pressure, the defendant wrote to the insured that the consideration of his application would be postponed for six months. No further inquiries upon that subject were ever made by the defendant. Its next communication was that of May 17, 1927. The only question propounded at that time was whether the prospect had consulted any physician since the date of his application (November 2, 1926). Blanks were furnished for the answering of this question. It was truthfully answered to the effect that in February, 1927, he had been under the care of his physician for two days. The sum of the situation under the evidence for the insured was that prior to February, 1924, the insured had had no medical attention since his attack of typhoid fever in 1912; that after March, 1924, he had had no medical care except for two days in February, 1927; that after February, 1927, he had had no medical care until

the serious illness which befell him on December 30, 1927. Upon such state of the record we see little room for saying that a jury question was not presented.

II.   Another charge of fraudulent representation is predicated upon the claim that the insured was *twice* rejected by the Mutual Life Insurance Company, whereas he reported only one rejection. This contention lacks substantial support in the defendant's evidence. What appears is that the insurance company rejected the application on the ground of abnormal blood pressure. The local agent, who looked upon the insured as his prospect, purported to be dissatisfied with the attitude of his company and wrote to them asking a reconsideration of the case. The response he got from the company was that there would be "No change". This circumstance furnishes the basis of the charge that the insured was twice rejected. If it had been literally true, it worked no prejudice to the defendant; nor was it a concealment of facts. The so-called second rejection was upon the same ground as the first, and was a mere adherence to a decision which was intended to be final, when made.

III.   A further charge of the defendant is that the insured had been rejected by several other insurance companies, and that such fact was withheld from the defendant. What appears in the evidence of defendant is that in the year 1919 certain local insurance agents for different companies looked upon the insured as a prospect, and each of them tried to secure him. When they discovered that he had an abnormal blood pressure, they knew that it would be an obstacle in the way of getting their applications through. The record shows that there is a custom or practice among insurance agents, approved by the insurance companies, known as "trial applications". This trial application consists of mere correspondence between the local agent and the home office whereby the agent submits the prospect with his doubt to the company. This is done in advance of actually securing the prospect, and in advance of any application by the prospect, and in advance of medical examination. In 1919 a correspondence of that kind was had in four instances by as many agents writing respectively to as many companies. Each agent was informed by the home office that the abnormal blood pressure would bar the prospect. When it is further considered that these transactions were had in 1919 and that the defendant company confined its inquiries to a period of five years preceding November 2, 1926, the significance of such alleged rejections is not persuasive.

Another case may be mentioned. It is claimed that the Missouri State Life Insurance Company rejected the application of the insured for insurance, and that this was concealed from this defendant. When did such rejection occur? *November 22, 1926.* The false representations charged by the defendant were made, if at all on *November 2, 1926.* These dates show that the alleged rejection occurred twenty days after the alleged representation had been made. Several other cases of alleged rejection are set forth in the record. We can not review them in detail. We have read all the evidence pertaining thereto. Behind each one of them we find a question mark of some kind. For instance, it is claimed that the insured was rejected by the Ætna Life Insurance Company and by the New York Life Insurance Company. As against this it is made to appear that he carried policies in each of said companies and that each policy was paid without contest. Furthermore, his widow testified that she was familiar at all times with his business and with his insurance applications, and that she knew that he had never been rejected by any company except the Mutual Life Insurance Company.

The foregoing must be deemed a sufficient indication of the general character of the evidence. It is quite impracticable for us to go into further details without unduly extending this opinion. The record, as presented, is not conducive to a very detailed discussion. It is presented here in a principal abstract with four amendments. There are many scores of exhibits. They are indexed only in an amendment to the abstract. The exhibits are not self-identifying. There are many Exhibits 1, and as many Exhibits 2, and Exhibits 3, etc. This multiplicity of designation deprives us of a convenient reference in the opinion to any exhibit in the record. It should be said, however, that we have suffered no special inconvenience in the reading of the record. What is clear to us upon a careful consideration of the whole record is that the appellant has not been able to get away from the jury issue. From no view of the record could we say that the defendant has affirmatively established fraudulent intent as a *matter of law.* The trial court submitted the question to the jury. The defendant submitted three special interrogatories for findings of fact, all of which were answered adversely to it. The issue was within the domain of the jury. Such is the only question submitted.

The judgment below is accordingly affirmed.—Affirmed.

KINDIG, C. J., and STEVENS, ALBERT, DONEGAN, and UTTERBACK, JJ., concur.