CHAPMAN, Justice.
. The plaintiff-appellant, Captain G. W. Adams, filed a common law action in the Court of Record of Escambia County, Florida, to recover on a policy of marine insurance issued by Royal Exchange Assurance, a corporation. The complaint alleged that the defendant, through its agent, The Brosnaham Agency, Inc., of Pensacola, Florida, for a premium'of $1,920 then paid or secured, issued its -policy of insurance upon plaintiff’s 63’ Gas Twin Screw Yacht “Surlew” against certain risks inclusive of fire, to the amount of $20,000. A copy of the insurance policy was attached to the complaint and made a part thereof by appropriate allegations.
Thereafter, on July 31, 1950, while the policy of insurance was in full force and effect, the said Yacht “Surlew” was burned and totally destroyed by fire in the coastal waters of the Gulf of Mexico off the West Coast of Florida, under such circumstances as to render liable and oblige the defendant to pay the sum of $20,000 of which the defendant had due notice and proof of loss which entitled the plaintiff to said payment of $20,000 by the defendant, but the defendant failed and refused to pay the same. The complaint seeks as additional thereto interest and attorneys’ fees. -
The answer of the Royal Exchange Assurance, defendant-appellee, to the complaint admitted: (1) the issuance of the policy of marine insurance sued upon; (2) it alleged that, the policy of .insurance was void for enumerated reasons; (3) denied that it was liable to the plaintiff in the sum of $20,000 for reasons set .out in its affirmative defenses; (4) it denied liability to the plaintiff - for reasonable attorneys’ fees incurred in the proceeding; (5) it denied that plaintiff was entitled to the judgment claimed in the complaint.
As, an affirmative defense to the complaint, the defendant set out: (1) the plaintiff, on or about July 1, ' 1950, made application in writing through defendant’s agent for the issuance of a policy of marine insurance on the Yacht “Surlew” and plaintiff signed the same; (2) plaintiff’s application stated and represented to defendant’s agents, among other things, that he was then President of Pensacola Yacht Basin, Inc., and that no underwriter had ever refused insurance to the plaintiff; (3) the said statements and representations were made by the plaintiff to the defendant’s agent for the purpose of inducing defendant to make, enter into and issue the policy of marine insurance sued upon; (4) the defendant relied upon the statements and representations of the defendant and issued and delivered to the plaintiff the policy sued upon; (5) the statements and representations contained in said application were, and each of them was, material to the risk and to the subject matter of said insurance; (6) the said statement and representation were false, untrue and misleading as plaintiff well knew * * * in that other underwriters had refused insurance to the plaintiff on the same Yacht within a comparatively short period of time prior to the signing of the said application by the plaintiff; (7) because of the false, untrue and misleading' statements and material misrepresentations so made by the plaintiff the policy of insurance sued upon is invalid; (8) the defendant tendered to plaintiff the premium of $1,920 with interest, and deposited the amount in the registry of the Court.
Plaintiff through counsel replied to the affirmative defenses numbered 2, 3, 4, 5, 6 and 7 substantially as follows: prior to the time of application for the policy sued upon plaintiff made application to the Marine Office of America, a marine insurance underwriter, for insurance upon the Yacht “Surlew”, but the insurance policy did not issue due to the unwillingness of the underwriter, for reasons unknown .to the plaintiff, *593 to assume the risk; that no other underwriters had at any time refused plaintiff insurance; the policy sued upon was issued to plaintiff through Siebels, Bruce & Company, which at the time was the manager of defendant’s Southern Department, and acted as its agent in the investigation of risk and the issuance of the policy sued upon; it was authorized as defendant's agent, in its discretion, to issue or refuse to issue the policy; Siebels, Bruce & Company was not the agent of plaintiff, but an insurance broker, and applied to the Marine Office of America for coverage and by it informed of all facts incident to the application for the insurance on the “Sur-lew”, and of the Marine Office of America previously declining to issue the insurance on the “Surlew”.- Said Siebels, Bruce & ' Company had full knowledge of said facts as agents of defendant prior to and at the time defendant authorized and caused to be issued the policy sued upon.
Evidence was adduced before a jury, by the respective parties. in support of the issues made by the. above pleadings and, after argument of counsel and instructions upon the law by the trial Court, the jury returned a verdict in the cause for, the defendant-appellee. The plaintiff filed a motion for a new trial on grounds: (1) the verdict was contrary to the evidence; (2) the trial Court erred in overruling plaintiff’s motion to strike the evidence of the witness Herbert Pfeiffer, Jr.;. (3) the Court erred in overruling plaintiff’s motion to strike the evidence of the witness J. E. Daniels; (4) the Court erred in refusing to permit the plaintiff to make proof of the circumstances surrounding the burning of the “Surlew”. The motion was duly overruled, judgment for the defendant entered in the Court below and the original plaintiff appealed.
According to the record, Julius E. Daniels was called as a witness for the defendant and testified that he was engaged in the general insurance business in the City of Pensacola. The plaintiff, Captain Adams, called over the telephone and wanted some 90-day or short term marine insurance on his Yacht “Surlew”. “I told him he might get what everybody was using on shrimp boats.” “I told him I didn’t care to handle it.” “Q. You declined to handle his application? A. I declined not to take his application.”. On cross examination the witness stated that he was not a marine operator.' He further stated (Tr. 71) that he was furnished with blanks and could submit complete information on the part of an applicant to the Marine Office of America at New Orleans for marine insurance. The Marine Office only had the power' to accept or reject the application for marine insurance. The witness had authority to issue and deliver policies of insurance in behalf of his fire insurance companies to applicants at' his own discretion. The witness further stated (Tr. 73) : “We are not agents for any marine. Marine of America is the one we do business with.” Also on Tr. 74: “Q. The only thing you can do in a marine risk is to submit the application? A. Positively.” Counsel for plaintiff ’ objected to the witness’ testimony and moved to strike same, but the trial Court denied the motion.
Plerbext Pfeiffer, Jr., was called and testified as a witness for the defendant. He testified as to being an insurance agent engaged as such in the Pensacola area. •Captain Adams called him over the phone and asked about trip coverage from Pensacola to South Florida. “I declined the insurance.” Captain Adams called over the phone the second time and inquired about the cost of coverage on his boat. “I advised” that it was impossible to give him any cost on this type of coverage because a survey of the boat was necessary. We would submit the same to the Company for quotations. On cross examination the witness stated they placed their marine insurance with underwriters operating out of Pensacola. “We did not submit Captain Adams’ application for marine insurance to the Marine Office of America (New Orleans). Captain Adams just called and asked df we could give him trip insurance and we replied that we could not.” The inquiry was not passed on the Marine Office of America.
The witness Pfeiffer was later recalled for cross examination (Tr.' 74-5). He stated that his office'issued fire insurance *594 policies on houses and buildings in Pensacola — the agents are clothed with a broad discretion in accepting and rejecting applications for fire insurance policies:
“Q. Do you handle marine policies the same way ? Suppose I bring my $20,000.00 yacht in here and say ‘Mr. Pfeiffer, I want a $20,000.00 yacht policy’. Do you write it? A. No, sir.
“Q. What do you do? A. We submit the application to the Marine Office of America.
“Q. Some times they accept it? A. They will not always accept the policy.
“Q. Some times they reject it? A. Well, I believe, — I don’t know, I am not that familiar with marine underwriting.
“Q. Have they got to write every policy you send in there ? A. No.
“Q. You send in the application, and they accept or reject it? A. That’s correct.”
Thereupon the witness was excused.
“Mr. Coe: I renew my motion.
“The Court: Motion denied and exception noted.”
The defendant’s-appellee’s requested charge No. 17 as given by the trial Court was based on the testimony of the above named witness. ' It is contended here that the above'testimony, coupled with the said charge, was clearly erroneous. The charge is viz.: “Should- you find that the defendant or its agents acquired knowledge of one refusal of insurance for the plaintiff, but the plaintiff was actually refused insurance by more than one other underwriter, then the knowledge of the defendant insurance company would not be full and complete, and your verdict should be for the defendant. In other words, you must find that the defendant insurance company had knowledge of all refusals of insurance to the pláintiff before the effect of any misrepresentation in the application on this score can be overcome.”
It is clear that neither of the witnesses had the authority to accept or reject applications for marine insurance, but did have a broad discretion in accepting and rejecting as well as issuing policies of fire insurance on buildings in the Pensacola area. These witnesses were permitted to testify that the application of the plaintiff for marine insurance was by the witnesses rejected, while their authority was limited to receiving applications and transmitting same to the Marine Office of America at New Orleans, where other officials had the discretion to accept or reject the applications. The motion to strike this testimony should have been granted. The evidence and foregoing instruction were prejudicial.
The judgment is reversed and a new trial awarded.
HOBSON, ROBERTS and MATHEWS, JJ., concur.
SEBRING, C. Jv and TERRELL and THOMAS, JJ., dissent.