Janice G. BRAATEN, As Administratrix and on Behalf of the Estate of Robert C. Braaten and the Estate of Robert C. Braaten, Plaintiffs and Appellees,

v.

MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Defendant and Appellant.

No. 13101.

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1981.

Decided Feb. 18, 1981.

Donald E. Osheim of Osheim, Fox & Bartron, Watertown, Galen J. Vaa of Thysell, Gjevre, McLarnan, Hannaher, Vaa & Skatvold, Moorhead, Minn., for plaintiffs and appellees.

W. A. Hackett of Austin, Hinderaker & Hackett, Watertown, for defendant and appellant.

MILLER, Circuit Judge.

## ISSUES

Did an applicant for credit life insurance make misrepresentations, omissions or concealments of fact which were fraudulent, material to the risk and knowledge of which would have resulted in the policy not being issued? Our holding is "yes."

Is the insurance company which issued the credit life policy estopped from denying coverage under said policy? Our holding is "no."

The judgment of the trial court holding to the contrary is reversed.

## PARTIES

Appellant is the insurer.

Appellees are the estate of the insured, Robert C. Braaten, and his widow, as administratrix thereof.

## FACTS

On April 3, 1975, in connection with a farm loan with the Rosholt Community Bank, Braaten made application for credit life insurance in the amount of $20,000. The application form was completed by Thomas Wagner, a bank officer and an agent with the bank insurance agency (operating as a separate corporation). Wagner inserted the answers in the application after reading the questions to Braaten and receiving his responses. Braaten signed the application, which later became a part of the policy which was issued on June 11, 1975.

The questions and answers which are material to this litigation are:

During the last three years, have you been hospitalized or have you consulted a physician for any reason?

Yes.

Have you ever been treated for or advised that you had any of the following: Heart, Lung, Nervous or Kidney Disorder, High Blood Pressure, Cancer or Tumor, Diabetes?

Yes.

If your answer to either question is yes, give particulars including name and address of physician and dates attended.

December 1974—Pneumonia—Dr. Kass, Rosholt, S. Dak. 57260

February 1975—Cataract Removed from Right eye—Dr. Ness, Fergus Falls, Minn.

Prior to the issuance of the policy, appellant's underwriting department made inquiry of Dr. Ness regarding the cataract surgery and the Medical Information Bureau (an agency which assembles and collects various medical data for distribution to insurance companies on a national basis). Dr. Kass, who appellant later learned was Braaten's family physician, was not contacted because under appellant's underwriting policy pneumonia has no actuarial or underwriting significance. Nothing learned from the above inquiries revealed anything which could cause appellant to not issue the policy.

Braaten died July 17, 1976, as the result of medical problems solely related to his addiction to alcohol.[1]

Subsequent to his death it was learned that from March 12–18, 1974, Braaten had been hospitalized at a Veterans' Hospital in St. Cloud, Minnesota, for alcohol addiction. He was readmitted to said hospital from April 19 to April 28, 1974, being diagnosed: (1) alcohol addiction (2) Laennec's cirrhosis[2] (3) anemia, iron deficiency.

Mr. Wagner, the bank officer/insurance agent who prepared the application and submitted it to appellant, testified that although he knew at the time of the application that Braaten "drank," he was not aware that he was an alcoholic and that he did not learn of the St. Cloud hospitalization until after Braaten's death. The evidence is clear that prior to Braaten's death various bank officers, who also functioned as bank insurance agents, were aware that Braaten had a severe drinking problem. There is ample evidence to support the trial court's finding that prior to the date of the application it was common knowledge in Rosholt (a small farming community), including employees of the bank and its insurance company, that Braaten had a drinking problem.

After appellant refused to pay the proceeds of the policy, tendering return of the unused portion of the premium, appellees commenced this action. The bank and one of its former officers were made parties; however, they were not parties at the time of trial, which was held on April 3, 1979. The trial court's memorandum decision was issued March 17, 1980, with the findings of fact, conclusions of law and judgment being dated April 15, 1980. This appeal followed.

## DECISION

### I. CONCEALMENT/FRAUD/MIS-REPRESENTATION ISSUE

Appellant claims it is entitled to be relieved from its liability under the policy because of the provisions of SDCL 58–11–44 which provide:

All statements and descriptions in any application for an insurance policy or annuity contract, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(1) Fraudulent, or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either have not issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

It is settled law in this jurisdiction that a false representation as to a material matter in an application for insurance, even absent a showing of an intent to deceive, renders the policy voidable, because an insurer is entitled to rely on the truthfulness of the answers given. *Herdman v. National Reserve Life Insurance Co.*, 87 S.D. 389, 209 N.W.2d 364 (1973); *Bushfield v. World Mut. Health & Acc. Ins. Co. of Pa.*, 80 S.D. 341, 123 N.W.2d 327 (1963); *Ivory v. Reserve Life Insurance Company*, 78 S.D. 296, 101 N.W.2d 517 (1960); *Norwick v. United Security Life Company*, 82 S.D. 640, 152 N.W.2d 439 (1967). See also *Lindlauf v. Northern Founders Insurance Company*, 130 N.W.2d 86 (N.D.1964).

Here, Braaten truthfully answered affirmatively that he had been hospitalized or

---

1. The death certificate recites that death was caused by
   a. Immediate cause—cardiogenic shock
   b. Due to, or as a consequence of—Hepatic failure
   c. Due to, or as a consequence of—Alcoholic cirrhosis

2. A disease of the liver in which alcohol is the chief etiologic factor.

consulted with a physician in the past three years and that he had either been treated for or advised that he had certain specified medical ailments or symptoms. However, when asked for names, addresses and dates of specific physicians who had attended him, he revealed only his treatment by Dr. Kass in December 1974 for pneumonia and his cataract surgery by Dr. Ness in February 1975.

For whatever reason he may have had, he made no mention of and did not disclose the names of the physician or physicians whom he consulted with or who treated him during his two hospitalizations the preceding year at the V.A. Hospital in St. Cloud.

■ Braaten's answers to the application here amounted to misrepresentations, omissions and concealments of fact which were fraudulent, and even if not fraudulent, reasonable minds could not differ that they were material to the acceptance of the risk or the hazard assumed. *Herdman v. National Reserve Life Insurance Co.*, supra, and *Lindlauf v. Northern Founders Insurance Company*, supra.

True, appellant's application could have been more artfully prepared and more specific as to general health and alcoholism questions. Nonetheless, appellant was entitled to true and accurate answers to those questions propounded by the application.

## II. ESTOPPEL ISSUE

The trial court found that since appellant's agent, the bank insurance agency, knew of Braaten's drinking problem both before and after the application, that knowledge should be imputed to appellant. The trial court further held that when considering the information that Braaten revealed in the application, coupled with the awareness of its agent regarding the alcohol problem and appellant's limited investigation of Braaten's medical history, it did not act in a responsible manner. For all of these reasons the trial court held that appellant was estopped from denying coverage. The conclusions of law specifically cite the following cases for such a holding: *Farmers Mutual Automobile Ins. Co. v. Bechard*, 80 S.D. 237, 122 N.W.2d 86 (1963),

and *Major Oil Corp. v. Equitable Life Assur. Soc. of U. S.*, 457 F.2d 596 (10th Cir. 1972).

■ We have previously stated and we now reiterate that a soliciting agent is deemed the general agent of an insurance company, and therefore any knowledge of said agent becomes the knowledge of and binding upon the company. *Farmers Mutual Automobile Ins. Co. v. Bechard*, supra; *Thomas v. Modern Brotherhood of America*, 25 S.D. 632, 127 N.W. 572 (1910).

However, we have made it clear that among the exceptions to this rule is that it assumes the existence of entire good faith on the part of the insured together with an absence of circumstances that could impute knowledge that the insurer would be deceived by the application. *Williams v. Black Hills Ben. Life Ass'n*, 70 S.D. 611, 19 N.W.2d 769 (1945). See also *Farmers Mutual Automobile Ins. Co. v. Bechard*, supra, and *Norwick v. United Security Life Company*, supra. That existence of entire good faith is absent here.

■ We agree with the general principle that the company may be charged with knowledge of information which it ought to have known. It will be charged with knowledge of facts when it has knowledge which would cause a prudent person to inquire further, when it could have been ascertained with reasonable convenience. See *Columbian Nat. Life Ins. Co. v. Rodgers*, 116 F.2d 705 (10th Cir. 1940).

We cannot disagree with the general principles set forth in *Major Oil Corp. v. Equitable Life Assur. Soc. of U. S.*, supra, which were so heavily relied upon by appellees and adopted by the trial court relating to knowledge of the same being imputed to the company by a prudent man test. However, the facts there are not comparable or applicable to those here.

In this case the company itself had before it a document which on its face was false, not by its content, but by its omissions. Under its own underwriting policy, the soundness of which was never challenged,

nothing was revealed which would cause it to pause or hesitate to act in a manner other than it did, which revealed no reason to refuse coverage.

██ Nothing in the record relating to the conduct of its agent erodes that position. The agent who inserted Braaten's answers for him was aware that Braaten "drank" (whatever that term means) but did not know that Braaten was an alcoholic (an equally difficult term to specifically define) nor was he aware that Braaten had been hospitalized in the V.A. Hospital until after Braaten's death. Other bank officers and/or bank insurance agency officers testified as to a similar knowledge, although one had expressed concern to Braaten's son, at a time between the application and the death, that his father's drinking was such that they should think of getting him to alcohol treatment.

Had Wagner or other bank insurance agency officials known of the V.A. hospitalizations, or if there had been evidence that they were in any manner aware of treatment by physicians or of a diagnosis of the maladies specified in the application, the trial court's finding could be upheld. Under the record it may not.

The judgment is reversed, and the case is remanded to the trial court with direction that it enter a judgment in favor of appellant.

All the Justices concur.

MILLER, Circuit Judge, sitting for FOSHEIM, J., disqualified.