#26485-a-GAS

**2013 S.D. 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DE SMET FARM MUTUAL INSURANCE
COMPANY OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

DAVID BUSSKOHL,                                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
CUSTER COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MARY P. THORSTENSON
Judge

\* \* \* \*

LARRY M. VON WALD of
Beardsley, Jensen &
  Von Wald, Prof., LLC
Rapid City, South Dakota                    Attorneys for plaintiff
                                            and appellee.


JOHN K. NOONEY
ROBERT J. GALBRAITH of
Nooney, Solay & Van Norman, LLP
Rapid City, South Dakota                    Attorneys for defendant
                                            and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 18, 2013

OPINION FILED **07/10/13**

#26485

SEVERSON, Justice

[¶1.] De Smet Farm Mutual Insurance Company of South Dakota (De Smet) initiated this action, claiming that it lawfully rescinded an insurance contract with David Busskohl because Busskohl made a material misrepresentation on his application for homeowner's insurance. De Smet also sought recovery of all monies it paid to Busskohl. De Smet moved for summary judgment. The circuit court granted De Smet's motion, determining, as a matter of law, that Busskohl made a misrepresentation on his homeowner's insurance application and that the misrepresentation was material. Busskohl appeals. We affirm.

## Background

[¶2.] On December 21, 2004, Busskohl applied for homeowner's insurance through De Smet. On the front page of the homeowner's insurance application appears the question: "Has any insurer cancelled, refused, restricted, or declined to renew similar insurance?" Busskohl answered "No."[1] Busskohl represented on the second page of the application that all statements in the application were true and correct, and he signed the application. Delano Gross, an underwriting supervisor for De Smet, reviewed the application and approved the issuance of a homeowner's policy with policy limits of $275,000 for Busskohl's residence, $27,500 for related private structures, $192,500 for personal property, and $55,000 for additional living costs to Busskohl. On December 6, 2005, Busskohl's home was destroyed by fire.

---

1. The application requires an applicant to check either a "Yes" or a "No" box. If an applicant checks the "Yes" box, the applicant is required to provide an explanation on the reverse side of the application.

-1-

Pursuant to the homeowner's insurance policy, De Smet made payments totaling $476,350 to Busskohl.

[¶3.] In 2007, Busskohl initiated a suit against Dixie Kirk and the Niederwerder Agency, Inc., the agent and agency through which Busskohl obtained the De Smet homeowner's insurance policy. Busskohl claimed that the coverage limits provided by the policy were inadequate and that Kirk and the Niederwerder Agency, Inc. were negligent in writing the policy. During the course of litigation, De Smet discovered that, contrary to Busskohl's representation in the insurance application, Busskohl had previously been refused homeowner's insurance by American Family Insurance Company (American Family).

[¶4.] Busskohl's alleged misrepresentation emerged through deposition testimony of Grace Busskohl, Busskohl's former wife,[2] and Mark Koch, an American Family agent in Custer, South Dakota. Grace testified that she and Busskohl went to Koch's office to obtain homeowner's insurance on a house they had recently built,[3] but were informed by Koch that American Family would not insure their new house. In his deposition, Koch confirmed that Busskohls came to his office following the 1990 fire wishing to purchase homeowner's insurance on their new house. Koch testified that he had some doubts about whether American Family would insure

---

2. David Busskohl and Grace Busskohl divorced in 2002.

3. David and Grace built the house because their previous house had been destroyed by a fire in 1990, which was the second fire to occur at that location. Prior to the 1990 fire, Busskohl's house, a mobile home owned by his parents, was destroyed by fire. Busskohl's parents used the insurance proceeds from that fire to build a house for Busskohl at the same location as the 1990 and 2005 fires.

Busskohls' house because of the 1990 fire. As a result, Koch contacted an American Family underwriter located in Eden Prairie, Minnesota, who advised Koch that American Family would not accept the risk due to Busskohls' loss history. Koch testified that he informed Busskohls that American Family would not insure them, but he acknowledged that an application for insurance was never submitted to American Family nor was Busskohls' visit documented.

[¶5.]    After discovering the misrepresentation in the application, De Smet rescinded the homeowner's insurance policy issued to Busskohl. De Smet also sent a letter, dated October 14, 2009, to Mr. John Nooney, the attorney representing Busskohl, reciting the basis for rescission. Enclosed in the October 14, 2009 letter was a check from De Smet made payable to Busskohl in the amount of $1,066.40, which represented the premium paid by Busskohl in connection with the issuance of the policy. The letter demanded that Busskohl repay all monies paid to Busskohl under the insurance contract ($476,350), along with interest at the statutory rate. In response, Busskohl claimed that several facts set forth and conclusions reached by De Smet were inaccurate. He also returned the $1,066.40 check from De Smet (representing the premium paid by Busskohl), which had been marked "void."

[¶6.]    In the October 14, 2009 letter addressed to Busskohl's counsel, De Smet advised Busskohl that it would not have issued a homeowner's insurance policy had he disclosed that American Family previously refused him homeowner's insurance. De Smet asserted: "Had such disclosure been made, the application further required that it be accompanied by an explanation. We have learned that

the explanation for American Family's refusal of homeowners insurance was the January 31, 1990, house fire."

[¶7.]	Delano Gross, the underwriting supervisor at De Smet who approved Busskohl's application, submitted an affidavit stating, in relevant part, that:

> 6.	The question [whether any insurer "cancelled, refused, restricted or declined to renew similar insurance"] is on the application for the purpose of obtaining risk information from the applicant that is used in determining whether the risk that is represented by the policy is acceptable to the Company. If there is a disclosure on an application for insurance that another insurer has earlier cancelled, refused, restricted or declined to re-new [sic] similar insurance, it must be concluded that such insurer has available certain, significant information that provides the reason or reasons for its determination that the risk is not acceptable and it will not issue a policy. The fact of a cancellation, a refusal, a restriction or an insurer's declining to re-new [sic] similar insurance directly affects the opinion of the Company in its underwriting process given that it is far more likely than not that the Company, if it had access to all the information available to the insurer involved in the earlier cancellation, refusal, restriction or declination of a renewal, would make the same decision as the other insurer and refuse to issue a policy. This is because the existence of such information on an application for insurance indicates to the Company that there is an increased risk of loss associated with the issuance of a policy.
>
> 7.	Had the application of David L. Busskohl disclosed that an insurer had refused similar insurance and had such refusal been explained as required by the application and, if the true facts had been made known to the Company, the Company, in good faith, would not have issued the policy. This is for the reason that had it been disclosed that American Family Insurance Company or any other insurer had refused homeowner's insurance on the Busskohl residence and personal property because of the January 31, 1990, fire that had destroyed the earlier residence that existed at or near the same location as the property described in the application, the Company would have made further inquiry relative to that fire. At the very least, the Company would have obtained a copy of the South Dakota Fire Marshall's Office Investigation Report[.]

8. The Report discloses that Deputy State Fire Marshal Jim Homes had investigated an earlier fire on January 26, 1983, where David Busskohl was living at the same location; that the Division of Criminal Investigation investigated the January 31, 1990, fire; and, it suggests that arson involving David Busskohl was a possible cause of the fire. As Underwriting Supervisor, I would never had approved the issuance of a homeowner's policy to David L. Busskohl under such circumstances.

[¶8.] Further, William Poppen, the general manager of De Smet, testified that "had the company been provided with the true facts as our application requires[,] . . . we would just never, never have issued that policy." Poppen further explained that:

> in the underwriting process of course what we rely on is the truthfulness of the representation with respect to any of those items, whether it had been a cancellation, a refusal, or a non-renewal, so that we can then look into those matters, and then make a judgement [sic] to determine whether or not there are issues and items that would materially affect the acceptance or rejection of the risk.

According to Poppen, if the question whether "any insurer cancelled, refused, restricted, or declined to renew similar insurance?" is answered truthfully, "it [gives] [De Smet] an opportunity then to look into the matter, and then make a determination."

[¶9.] On February 13, 2012, De Smet initiated this action against Busskohl, alleging that it lawfully rescinded the insurance contract with Busskohl. De Smet also sought recovery of all monies paid to Busskohl under the insurance contract. On May 11, 2012, De Smet filed a motion for summary judgment, contending that it was entitled to judgment as a matter of law and recovery of all sums paid to Busskohl under the policy plus interest at the statutory rate.

[¶10.]     The circuit court issued a memorandum decision on July 10, 2012, ruling that De Smet was entitled to rescind the insurance contract with Busskohl and to recover all monies paid to Busskohl, plus interest. The court determined, as a matter of law, that Busskohl made a misrepresentation in his homeowner's insurance application and that the misrepresentation was material. On August 3, 2012, the court authored a second memorandum decision concerning the amount of monies owed to De Smet by Busskohl. The court then filed an order granting summary judgment to De Smet and entered judgment in favor of De Smet in the amount of $786,621.18, plus interest. Busskohl appeals, arguing that the court erred in granting summary judgment in favor of De Smet because a material question of fact exists regarding whether Busskohl made a material misrepresentation on his application for homeowner's insurance.

## Standard of Review

[¶11.]     This Court's standard of review of a circuit court's grant or denial of a motion for summary judgment is well-settled:

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Brandt v. Cnty. of Pennington,* 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874 (quoting *Jacobson v. Leisinger,* 2008 S.D. 19, ¶ 24, 746 N.W.2d 739, 745).

## Analysis

[¶12.] De Smet claims it was entitled to rescind the homeowner's insurance contract with Busskohl under the provisions of SDCL 58-11-44, which provide, in relevant part:

> All statements and descriptions in any application for an insurance policy, certificate, or annuity contract, by or on behalf of the insured or annuitant, shall be deemed to be representations and not warranties. No misrepresentation, omission, concealment of fact, or incorrect statement prevents a recovery under the policy or contract unless:
>
> (1) Fraudulent or an intentional misrepresentation of a material fact; or
>
> (2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

"It is settled law in this jurisdiction that a [misrepresentation] as to a material matter in an application for insurance, even absent a showing of an intent to deceive, renders the policy voidable, because an insurer is entitled to rely on the truthfulness of the answers given." *Braaten v. Minn. Mut. Life Ins. Co.*, 302 N.W.2d 48, 50 (S.D. 1981) (citations omitted).

*Busskohl's Application Response Constituted a Misrepresentation*

[¶13.] Our first task on appeal is to determine whether Busskohl's application response was false or misleading so as to qualify as a misrepresentation under SDCL 58-11-44. "Generally, the question of whether an applicant's

statements were false or misleading is a jury question[,] [b]ut when the facts are not in dispute . . . courts can decide this question as a matter of law." *Bennett v. Hedglin*, 995 P.2d 668, 671 (Alaska 2000) (citing *Spellmeyer v. Tenn. Farmers Mut. Ins. Co.*, 879 S.W.2d 843, 846 (Tenn. Ct. App. 1993)). The circuit court held, as a matter of law, that Busskohl misrepresented he was never refused similar insurance in the past. The court found there was undisputed evidence that Busskohls were denied a verbal application by American Family, and, relying on *Strong v. State Farm Mut. Ins. Co.*, 76 S.D. 367, 78 N.W.2d 828 (1956), the court determined that American Family's denial was a refusal to provide insurance.

[¶14.]        In *Strong*, the insurance application contained the following question: "Has any insurer cancelled or refused to renew any kind of automobile insurance for any driver?" *Id.* at 368, 78 N.W.2d at 829. The insured answered in the negative even though he had received a letter from a prior insurer notifying him that the insurer would not renew his insurance. *Id.* This Court determined the insured made a misrepresentation in the application for insurance, explaining that "[a] refusal to renew a policy of insurance need not be in any particular form. Nor do the reasons for the refusal have to be stated. It is sufficient when the insurer clearly and unequivocally indicates to the insured its unwillingness to continue upon the risk." *Id.* at 370, 78 N.W.2d at 829-30.

[¶15.]        Although *Strong* dealt with a refusal to renew, rather than a refusal to issue a policy, as in this case, the circuit court reasoned that *Strong*'s holding was still applicable. The court stated, "like with a refusal to renew, insurers are not required to issue their rejections in any particular form." The court also concluded

that a written application was not necessary because "the De Smet application did not inquire as to whether Busskohl's prior *written* application had been rejected, only whether he had been denied similar coverage in the past." Moreover, "American Family was not required to memorialize [its] rejection in any particular form."

[¶16.]    Busskohl argues that the circuit court erred in finding, as a matter of law, that he made a misrepresentation on his application for homeowner's insurance. Busskohl maintains he was truthful and accurate when he represented that he had not been denied similar insurance coverage. Further, Busskohl contends that he withdrew his offer to purchase insurance from American Family prior to submitting an application because he and Grace decided to inquire elsewhere for insurance. Busskohl also argues that *Strong* is distinguishable because there was no previous relationship between American Family and Busskohl like there was between the parties in *Strong*.

[¶17.]    The circuit court correctly determined that the evidence of American Family's verbal denial was undisputed. Busskohl did not present evidence to contradict the deposition testimony of Grace Busskohl and Mark Koch, which indicated Busskohls were denied a verbal application by American Family. And, contrary to Busskohl's assertion, Busskohls did not voluntarily withdraw their application. Instead, Busskohls were required to seek homeowner's insurance elsewhere because of American Family's verbal denial. Further, American Family's verbal refusal was sufficient because *Strong* does not require the refusal to be in any particular form nor does De Smet's application for insurance ask whether a

written application had been denied. It is immaterial whether a previous relationship existed between the parties because the clear import of *Strong* is that the insurer's refusal be clear and unequivocal. Here, like in *Strong* where the insured, upon receiving the refusal letter, immediately applied for insurance in the defendant company, Busskohls evidently understood the significance of American Family's denial because they subsequently applied for insurance from another insurance company.

[¶18.] Nevertheless, relying on *Adams v. Royal Exchange Assurance*, 62 So.2d 591 (Fla. 1952), *S.E.A., Inc. v. Dunning-Lathrop & Assoc., Inc.*, Nos. ooAP-165, ooAP-178, 2000 WL 1863392 (Ohio Ct. App. Dec. 21, 2000), and *Getsinger v. Union Mutual Life Insurance Co. of Iowa*, 247 N.W. 260 (Iowa 1933), Busskohl claims he could not have been refused insurance without submitting an application to American Family. However, as De Smet correctly points out, these cases are distinguishable from the present case, and thus, do not support Busskohl's position.

[¶19.] For example, in *Adams*, the insured sought to recover on a policy of marine insurance issued by the insurer. 62 So.2d at 592. The insurer denied liability on the basis that the insured misrepresented he had never been refused insurance by any other underwriter. *Id.* at 592-93. Two witnesses, both insurance agents, were allowed to testify that they had previously refused insurance to the insured. *Id.* at 593. Because neither of the witnesses were underwriters, the court found that the witnesses' testimony did not establish that the insured made a misrepresentation in his application for insurance. *Id.* at 594-95. The court concluded that their testimony should have been stricken. *Id.* at 594. The court

also concluded that an instruction given by the court based on the witnesses' testimony was prejudicial error. *Id.* Here, unlike in *Adams*, the question in the De Smet insurance application did not ask whether an "underwriter" refused similar insurance. Even if it had, Koch's undisputed testimony established that he called an underwriter in Eden Prairie who indicated American Family would not issue a policy to Busskohl based on Busskohl's claims history.

[¶20.] In *S.E.A.*, the court held that summary judgment was improper because a material issue of fact remained regarding the meaning of certain terms in the insurance application. 2000 WL 1863392, at *9. The court found that "if a term within a policy of insurance is not defined by the contract and the term has a special meaning within the particular trade or industry concerned, the court may resort to extrinsic evidence to establish that meaning." *Id. at* *7. The court stated, "prior to establishing the meaning of [the terms at issue], summary judgment in favor of the insurer constitutes error inasmuch as a question of fact exists as to the meaning of the material contract term." *Id.* In that case, both parties submitted conflicting evidence as to the meaning of the terms at issue, which raised a material issue of fact for the jury to determine. *Id* at *9. Here, unlike in *S.E.A.*, there was no issue of interpretation. Further, no genuine issue of material fact existed because Busskohl did not submit evidence to contradict De Smet's evidence establishing that Busskohls were refused insurance by American Family.

[¶21.] In *Getsinger*, local agents submitted "trial applications" to the home office before securing the prospect and before the prospect submitted an application. 247 N.W. at 263. This practice allowed agents to submit their doubts about the

prospect to the company before trying to secure the prospect. *Id.* Unlike the prospects in *Getsinger*, Busskohl sought insurance from American Family. Therefore, *Getsinger* is distinguishable.

[¶22.] Finally, Busskohl contends that even if American Family refused him similar insurance, he did not make a misrepresentation because he had no intent to deceive. To support his position, Busskohl asserts that American Family's denial was not clearly and unequivocally indicated to Busskohl as required by *Strong*, 76 S.D. at 370, 78 N.W.2d at 829-30. De Smet claims Busskohl's argument is incorrect under our prior case law and that Busskohl's intent is immaterial. We agree. "[A] false representation as to a material matter in an application for insurance, *even absent a showing of an intent to deceive*, renders the policy voidable[.]" *Braaten*, 302 N.W.2d at 50 (emphasis added). Therefore, Busskohl's argument is without merit. Because the evidence was undisputed that Busskohl was previously refused insurance, no genuine issue of material fact existed. The circuit court did not err in finding, as a matter of law, that Busskohl's response in the application for De Smet homeowner's insurance was a misrepresentation.[4]

*Busskohl's Misrepresentation Was Material to De Smet's Acceptance of the Risk*

[¶23.] To rescind the insurance contract under SDCL 58-11-44, De Smet argued that Busskohl's misrepresentation was material to its acceptance of the risk,

---

4. The dissent proposes that Busskohl's "no" answer on the insurance application should not be considered a misrepresentation and references the word "refusal" as used in SDCL 58-11-45.3. That statute addresses notification of refusal to issue an *automobile* policy in reliance on information from an agency or person other than information from the insurance producer. It does not apply to the situation in the present case.

and that it, in good faith, would not have issued the policy had the true facts been disclosed.[5] The circuit court found, as a matter of law, that Busskohl's misrepresentation was material to De Smet's acceptance of the risk under SDCL 58-11-44(2), stating, "[g]iven the nature of Busskohl's loss history, and the fact that the omitted application information would have at least provided De Smet an opportunity to investigate into that history, reasonable minds could not dispute that this information was material to the insurer's assumption of risk." Because an insurer is only required to prove one of the subparts enumerated in SDCL 58-11-44, the court did not determine whether Busskohl's misrepresentation permitted De Smet to rescind the contract under SDCL 58-11-44(3).

[¶24.] Busskohl argues that the circuit court erred in determining, as a matter of law, that Busskohl's misrepresentation was material to De Smet's acceptance of the risk. Busskohl contends his misrepresentation would not have reasonably influenced De Smet's decision to issue a policy. According to Busskohl, De Smet issued policies to 90% of applicants answering "Yes" to the question: "Has any insurer cancelled, refused, restricted or declined to renew similar insurance?" Thus, based on De Smet's past practices, Busskohl contends no evidence exists to suggest that De Smet would not have issued a policy to Busskohl had he answered "Yes." De Smet, on the other hand, contends Busskohl's misrepresentation was material because it failed to apprise De Smet of critical information that would have prompted an investigation and revealed facts relating to Busskohl's prior loss history.

---

5. De Smet made no claim that fraud was an issue in the case.

[¶25.]     Materiality is a question of law for the court:

> [w]here the application for an insurance policy is made the basis of the insurance contract, is attached to and made a part of the contract, and there are misrepresentations in the answers of the applicant to the questions in such application, and it appears from the record that reasonable minds could not differ on the question as to whether the matter misrepresented increased the risk of loss[.]

*Herdman v. Nat'l Life Ins. Co.*, 87 S.D. 389, 397-98, 209 N.W.2d 364, 368 (1973).  A misrepresentation "in an application for insurance is material to the risk if it is such as would reasonably influence the decision of the insurer as to whether it would accept or reject the risk." *Id.* (quoting *Ivory v. Reserve Life Ins. Co.*, 78 S.D. 296, 301, 101 N.W.2d 517, 519).  "The materiality of a [misrepresentation] . . . must be determined by its probable and reasonable influence upon the insurer." *Ivory*, 98 S.D. at 301, 101 N.W.2d at 519.

[¶26.]     We found no South Dakota authority holding that a refusal of similar insurance is material to the insurer's acceptance of the risk.  However, it is generally recognized that in an application for insurance, a representation that an applicant has not been refused similar insurance by any other insurer is material to the risk because the insurer may rely upon it when acting on the application.  *See* 6A *Couch on Insurance* 3d § 89:9 (2012) ("A statement that the applicant has not been rejected for insurance by any other insurer is material to the risk in that any action taken by the insurer may depend upon it.").  *See S. Farm Bureau Cas. Ins. Co. v. Ausborn*, 155 S.E.2d 902, 910 (S.C. 1967); *Inter-Ocean Ins. Co. v. Harkrader*, 67 S.E.2d 894, 897-98 (Va. 1951); *Ky. Home Mut. Life Ins. Co. v. Suttles*, 156 S.W.2d 862, 864-65 (Ky. 1941); *Greber v. Equitable Life Assur. Soc. of U.S.*, 28 P.2d 817,

818-19 (Ariz. 1934); *Applebaum v. Empire State Life Assur. Soc.*, 166 A. 768, 769 (Pa. 1933); *Wilson v. State Farm Fire & Cas. Co.*, 761 So.2d 913, 920 (Miss. Ct. App. 2000); *Pruitt v. Allstate Ins. Co.*, 234 N.E.2d 576, 577 (Ill. App. Ct. 1968). This rule:

> rests upon a sound basis because disclosure of the fact that one applying for a policy has been rejected by another company immediately suggests that he is probably not a good risk and undoubtedly leads to a more careful and thorough examination than would be true in the case of one whose application had not been rejected. It not only informs the company whether other insurers have regarded him as unsafe, and places it, so to speak, on inquiry, but may advise it as to any anxiety for insurance the applicant might have.

*Greber*, 28 P.2d at 818-19 (citations omitted).

[¶27.] Busskohl's misrepresentation was material to De Smet's acceptance of the risk. Gross's affidavit indicated that De Smet asks applicants whether any insurer refused similar insurance to obtain risk information, which is used to determine whether the risk represented in the application is acceptable to De Smet. Gross also stated that a prior refusal directly affects De Smet's underwriting process because it is far more likely than not that De Smet would make the same decision as the prior insurer. Moreover, Poppen testified that De Smet relies on the truthfulness of the representations in the application to determine whether there are "issues or items that would materially affect the acceptance or rejection of the risk."

[¶28.] Busskohl failed to present evidence demonstrating that his application response was not material to the risk of insuring his home. Instead, Busskohl contends no evidence exists to suggest that De Smet would not have issued a policy to Busskohl had he answered "Yes." This argument overlooks the fact that

Busskohl's misrepresentation failed to put De Smet on notice and prevented De Smet from conducting an investigation that would have revealed facts material to De Smet's acceptance of the risk. Based upon the record before us, we cannot conclude that reasonable minds would differ on the question as to whether Busskohl's misrepresentation increased the risk of loss. Accordingly, the circuit court properly found, as a matter of law, that Busskohl's misrepresentation in his application for homeowner's insurance was material to De Smet's acceptance of the risk, and this Court need not look to SDCL 58-11-44(3).

## Conclusion

[¶29.] Because no material question of fact exists regarding whether Busskohl made a material misrepresentation on his application for homeowner's insurance, the circuit court did not err in granting summary judgment in favor of De Smet.

[¶30.] Affirmed.

[¶31.] GILBERTSON, Chief Justice, and ZINTER and WILBUR, Justices, concur.

[¶32.] STOLTENBURG, Circuit Court Judge, dissents.

[¶33.] STOLTENBURG, Circuit Court Judge, sitting for KONENKAMP, Justice, disqualified.


ZINTER, Justice (concurring specially).

[¶34.] I join the opinion of the Court. I write to point out that the dissent is based on an incorrect description of American Family's prior refusal to insure the

Busskohls. The only evidence on this issue came from the deposition testimony of American Family Insurance Agent Mark Koch and Grace Busskohl, David's wife at the time they were refused homeowner's insurance by American Family. This testimony was not disputed by David. And it clearly reflects that the prior refusal to insure was not, as the dissent describes it, an ancient casual conversation regarding an unremarkable attempt to obtain insurance. *See* Dissenting Opinion, *infra* ¶¶ 39, 45.

[¶35.] On the contrary, the record reflects that after the 1990 fire that destroyed Busskohls' prior home, David and Grace rebuilt and were calling insurance agencies, attempting to insure their new home. David and Grace went to Agent Koch's office seeking homeowner's insurance. They discussed the construction plans for the new home. They even visited the home itself "to see if we could insure it." Deposition of Agent Koch, 7. Agent Koch expressed his doubts to the Busskohls because their prior home had been recently destroyed by fire. Nevertheless, Agent Koch "contacted an underwriter from the company and [the underwriter] said absolutely we couldn't [insure the new home] because of the loss history." *Id.* Shortly thereafter, Agent Koch notified Busskohls: "American [F]amily had refused to write insurance [on their new house.]" *Id.* at 9. Agent Koch specifically told them that the refusal was because of their claims history.

[¶36.] Grace confirmed that American Family's refusal to insure was a significant event. In her deposition, Grace acknowledged that the South Dakota Division of Criminal Investigation investigated the 1990 fire and David was

arrested for arson.[6] She then indicated that she and David knew their insurer at the time of the 1990 fire (Allstate) would not insure their new home. Consequently, she testified that she and David went to Agent Koch's office to obtain insurance, but American Family would not insure them. She specifically confirmed that she and David were both in Agent Koch's office when he informed them: "You have been denied." Deposition of Grace Busskohl, 61. She even testified that she and David understood they had to find another agency.

[¶37.] These facts were undisputed. They clearly indicate that American Family's refusal to insure the Busskohls was a remarkable event. It certainly was not some remote casual conversation. *Cf.* Dissenting Opinion, *infra* ¶¶ 39, 45. Therefore, under the facts of this case, I agree that David made a material misrepresentation on the insurance application with De Smet.

STOLTENBURG, Circuit Court Judge (dissenting).

[¶38.] I respectfully dissent.

[¶39.] The majority opinion holds that an insured's conversation with an insurance agent 14 years prior to submitting an application for insurance creates a duty to disclose the content of that conversation. According to the Court, this duty to disclose, although done with no intent to deceive, creates a legal basis for voidance of the insurance policy.

[¶40.] Here, David Busskohl suffered a fire loss approximately one year after De Smet Farm Mutual insured his property. De Smet paid the loss in the sum of

---

6. The charges were later dismissed.

$476,350. When Busskohl contended that his agent had underinsured the property, De Smet reviewed the application for insurance and determined that Busskohl was refused similar insurance 14 years prior to applying for insurance with De Smet, and thus, made a misrepresentation entitling De Smet to void the policy.

[¶41.] The question at issue on the De Smet insurance application is as follows: **"Has an insurer cancelled, refused, restricted or declined to renew similar insurance?"** Busskohl answered "no". De Smet does not contend that an insurer "cancelled", "restricted", or "declined to renew" similar insurance for Busskohl. However, it does contend that Busskohl was "refused similar insurance[,]" and thus, made a misrepresentation in his application. So how was Busskohl refused similar insurance? The refusal stems from a verbal conversation held by Busskohl and his wife with an insurance agent 14 plus years prior to his application to De Smet. Busskohl made no written application for insurance, nor was he ever notified in writing that he was refused. Yet, it is this conversation that forms the legal basis to deny financial compensation for the total loss of Busskohl's home and its contents.

[¶42.] Furthermore, although the majority deems Busskohl's answer to be a misrepresentation as a matter of law, no intent to deceive or defraud is present in this case. Consequently, without any intent to deceive requirement for a misrepresentation, Busskohl is held to a mere negligence standard.

[¶43.] SDCL 58-11-44 states in pertinent part:

> All statements and descriptions in any application for an insurance policy, certificate, or annuity contract, by or on behalf of the insured or annuitant, shall be deemed to be representations and not warranties. No misrepresentation,

omission, concealment of fact, or incorrect statement prevents a recovery under the policy or contract unless:

(1)     Fraudulent or an intentional misrepresentation of a material fact; or

(2)     Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3)     The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

[¶44.]     Although De Smet contends that it would not have issued the policy to Busskohl because he was refused similar insurance in the past, it is clear from the record that it is not the fact that Busskohl was "refused similar insurance," but the fact that Busskohl had prior insurance claims.[7]  Consequently, De Smet, now armed with this prior loss information, asserts that it would not have issued the policy and such information was material to their acceptance of the risk.  Importantly, De Smet's application for insurance specifically requests information about past claims, but only for the past 3 years.[8]  Busskohl's fire loss claims were 21 and 14 years prior to his application to De Smet!  De Smet has now successfully brought these two prior claims into this litigation through the proverbial back door.  If De Smet

---

7.     Busskohl made and collected insurance proceeds on two prior fire loss claims dating back to 1983 and 1990: 21 and 14 years respectively, prior to applying for insurance with De Smet.

8.     Busskohl answered "no" to the question on De Smet's application asking whether Busskohl had any "[c]laims or losses during past three years which were or would have been covered by similar insurance?"  There is no assertion that Busskohl misrepresented his answer to this question.

wanted to underwrite its risk based upon past claims, it should be required to do so in a straightforward question on its application form.

[¶45.] The circuit court and now this Court incongruously permits De Smet to circumvent its own underwriting process to the detriment of Mr. Busskohl. The effect of the majority opinion seemingly opens the door for insurers to backward underwrite its issued policies and deny otherwise valid claims based upon subsequent investigations to answers on its application forms going back untold years. Is any casual conversation with an insurance agent, however long ago, now going to be the basis for possible denial of otherwise insured losses? More should be required.

*Busskohl's Application Response Did Not Constitute a Misrepresentation.*

[¶46.] Busskohl's "no" answer on the application should not be considered a misrepresentation. The well-established principle is that "a contract of insurance is to be construed liberally in favor of the insured and strictly against the insurer. *Strong*, 76 S.D. at 369, 78 N.W.2d at 829 (citing *Ehrke v. N. Am. Life & Cas. Co.,* 71 S.D. 376, 24 N.W.2d 640 (1946)).

[¶47.] The rule of liberal construction in favor of the insured and strict construction against the insurer applies only where the language of the contract is ambiguous and susceptible of more than one interpretation and is also subject to the further limitation that such language ordinarily cannot be construed otherwise than according to its plain and ordinary meaning.

*Id.* at 369, 78 N.W.2d at 829 (quoting 44 C.J.S. *Insurance*, § 297(2)). "Construction which distorts the plainly revealed sense in which parties have understood words cannot be justified in the name of liberal interpretation." *Id.* (quoting *Life Benefit, Inc., v. Elfring*, 69 S.D. 85, 90, 7 N.W.2d 133, 135 (1942)).

[¶48.] The words used by De Smet in its application are terms of art in the insurance industry and under our state statutes. *See* SDCL 58-11-46, -47, -49, -50 ("cancelled"); SDCL 58-15-11, -69 ("restricted"); SDCL 58-11-51, -52, -53 ("nonrenewal"). "Refusal" is a term of art used in the insurance context and has a very specific meaning. Specifically, as it relates to the facts of this case, SDCL 58-11-45.3 requires an insurer to provide notice to the applicant on its "refusal" to insure, but this "refusal" only occurs if the applicant has tendered a premium with the application. A violation of this statute by an insurer constitutes a Class 2 misdemeanor.

[¶49.] Here, the evidence is undisputed that when the Busskohls had a conversation with an American Family agent in 1990, no premium was tendered, nor was any formal application submitted to the insurer. How was Busskohl "refused similar insurance" under our state statutes? As a matter of law, Busskohl was not refused similar insurance and there was no misrepresentation made by him to De Smet. Our laws requires very specific actions by insurers to "cancel," "restrict," "nonrenew," and "refuse to insure" individuals to whom they deal with and subjects insurers to criminal penalties if the rules are not complied with. The circuit court and the majority are in error in leaping to the legal conclusion that a misrepresentation was made by Busskohl on the insurance application.

[¶50.] Furthermore, public policy dictates a different result under the circumstances of this case. Good faith and fair dealing are at the heart of the relationship between an insurer and its insured. Good faith is required by SDCL

58-11-44. This Court has approved language reflecting the realities of this relationship:

> The insurer's obligations are . . . rooted in their status as purveyors of a vital service labeled quasi-public in nature. Suppliers of services affected with a public interest must take the public's interest seriously, where necessary placing it before their interest in maximizing gains and limiting disbursements. . . . [A]s a supplier of a public service rather than a manufactured product, the obligations of insurers go beyond meeting reasonable expectations of coverage. The obligations of good faith and fair dealing encompass qualities of decency and humanity inherent in the responsibilities of a fiduciary. Insurers hold themselves out as fiduciaries, and with the public's trust must go private responsibility consonant with that trust.

*Trouten v. Heritage Mutual Ins. Co.*, 2001 S.D. 106, ¶ 31, 632 N.W.2d 856, 863 (quoting *Egan v. Mut. of Omaha Ins. Co.*, 620 P.2d 141, 146 (Cal. 1979)) (internal citation omitted) (alterations in original). Simply stated, insurer questions posed on an application for insurance should not become a landmine field for an insured to traverse.

[¶51.] For these reasons, I respectfully dissent.